ROYAL BANK OF LIVERPOOL *vs.* GRAND JUNCTION RAILROAD AND DEPOT COMPANY & others.

Suffolk.    March 27, 28, 1877. — Oct. 19, 1878.    COLT & SOULE, JJ., did not sit.

In 1856, the G. company, of which A. was treasurer and B. a director, became hopelessly insolvent. In April, 1862, A. obtained a judgment against the company for about $26,000, upon which execution was issued, levied and satisfied by the sale of its franchise for the term of ninety-nine years to the E. company, which was chartered in March, 1862, and in which A. and B. were stockholders, A. owning at the first issue nearly all the shares of stock. In July, 1862, B., having been authorized thereunto at the annual meeting of the stockholders of the G. company, held in May, 1862, made a conveyance of all its real estate, railroad, franchise, rights and privileges, and the right of redeeming the same to the E. company in consideration of $13,085; and at a subsequent annual meeting of the G. company, held in May, 1865, the conveyance was ratified and confirmed as its free act and deed. In 1866, the B. & W. Railroad Company, under the St. of 1866, c. 278, took certain railroad property, "being all the property of the E. company," which had greatly increased in value; and a jury in 1867 assessed the damages for such taking at $536,260, and judgment was rendered for the E. company for $235,566, being the amount of the verdict after deducting certain incumbrances assumed by the B. & W. Railroad Company. In May, 1869, the E. company authorized the conveyance of all its corporate property to the B. & A. Railroad Company, the successor of the B. & W. Railroad Company, and such conveyance was duly executed. In 1865, the holder of certain unsecured bonds of the G. company, which were dated January 1, 1850, and became due on July 1, 1855, and were unpaid brought an action thereon which was still pending, when such holder, in 1868

brought a bill in equity against the above corporations and A. and B., to reach and apply a sum of money in the possession of the B. & A. Railroad Company and alleged to belong to the G. company, on account of fraud on the part of A. and B., in payment of his bonds. *Held*, that such holder had been guilty of laches and unreasonable delay, and that the bill could not be maintained.

BILL IN EQUITY, filed January 23, 1869, against the Grand Junction Railroad and Depot Company, the East Boston Freight Railroad Company, the Boston and Worcester Railroad Company, the Boston and Albany Railroad Company, Samuel S. Lewis and George W. Gordon, to reach and apply a sum of money in the possession of the two corporations last named, and alleged to belong to the first named corporation, in payment of a debt due from it to the plaintiff. Hearing on the pleadings and proofs, and an agreed statement of facts, before *Ames*, J., who reserved the case for the consideration of the full court. The material facts appear in the opinion.

*G. G. Hubbard & C. E. Hubbard*, for the plaintiff.

*J. G. Abbott & B. Dean*, for the defendants

AMES, J. The Grand Junction Railroad and Depot Company became embarrassed, and ceased to pay the coupons on its bonds, in the latter part of the year 1856. Its property was incumbered by mortgages of a large amount, and it was understood to be hopelessly insolvent. The plaintiff held fifty of its bonds, dated January 1, 1850, unsecured by any mortgage, amounting to $25,000, (besides interest in arrear,) which had become due on July 1, 1855, and were not paid. Upon these bonds it commenced a suit in August, 1865, in which an attachment upon all of the debtor corporation's real estate was returned upon the writ, which suit was pending at the date of the filing of the plaintiff's bill. No part of the debt has ever been paid.

At a term of the Superior Court for the county of Suffolk, held in April, 1862, George W. Gordon, one of the defendants, then the treasurer of the corporation, obtained a judgment against it for about $26,000, upon which an execution was issued; and the execution so issued was levied upon and satisfied by the sale of its franchise, with all the rights and privileges thereof, " so far as relates to the receiving of toll," to the East Boston Freight Railroad Company, for the term of ninety-nine years. This last named corporation was chartered by the Legislature of this Com-

monwealth in March, 1862, Gordon and Lewis being stockhold-
ers therein, and Gordon owning, at the first issue of the stock,
nearly all the shares.    In July, 1862, Lewis, professing to act on
the behalf and with the authority of the Grand Junction Rail-
road and Depot Company, of which he was a director, executed
a deed purporting to convey, in consideration of $13,085.56, all
the real estate of that corporation, with its railroad, and fran-
chise, and all its rights and privileges, and the right of redeem-
ing the same or any part thereof, to the East Boston Freight
Railroad Company.    At the annual meeting of the stockholders
of the Grand Junction Railroad and Depot Company, held on
May 31, 1862, a vote had been passed which in terms authorized
Lewis to make this conveyance; and at a subsequent annual
meeting, held on May 23, 1865, a vote was passed unanimously,
to approve, ratify and confirm the above described conveyance,
as the free act and deed of the corporation.   In all these votes
and acts of the corporation we find no apparent informality of
any kind, and, so far as the title can be judged of by the papers
alone, the franchise, property and rights of the Grand Junction
Railroad and Depot Company were effectually transferred to the
new corporation.    This new corporation accordingly held the
property and continued to exercise the franchise without inter-
ruption until November, 1866.

Under the authority given by the St. of 1866, c. 278, the
Boston and Worcester Railroad Corporation, in November, 1866,
took the railroad property known as the Union and Grand Junc-
tion Railroad, including all the railroad franchises and lands,
"being all the property of the East Boston Freight Railroad
Company," subject to the condition of paying to the owners
such damages as should be awarded to them by the verdict of
a jury upon proper proceedings.    A hearing was accordingly
had before a jury in December, 1867, and those damages were
assessed at $536,260.20, and a verdict was rendered for that
amount.    At a term of the Superior Court in March, 1869,
(viz.: June 8, 1869,) by agreement of the parties, judgment
was rendered in favor of the East Boston Freight Railroad
Company for the sum of $235,566.33, that being the amount of
the verdict after deducting the amount of certain incumbrances
assumed by the respondent in that case.    And, in addition to

this proceeding, the stockholders of the East Boston Freight Railroad Company, by vote passed May 19, 1869, authorized the conveyance of all the corporate property to the Boston and Albany Railroad Company, the successor of the Boston and Worcester Railroad Company, and such a conveyance has since been duly executed.

In its bill, the plaintiff insists that, however formal and regu· lar the incorporation of the East Boston Freight Railroad Company, and its acquisition of the franchise and property of the Grand Junction Railroad and Depot Company, may appear on paper, the whole transaction was essentially fraudulent. The claim is that Gordon was not a *bonâ fide* creditor of the last named company; that the notes upon which his judgment was founded had been paid, or were originally without consideration and void; that the East Boston Freight Railroad Company was really Gordon and Lewis, under another name and form; and that the whole arrangement was merely a scheme to place the entire property in the hands of Gordon and Lewis and their associates, at an insignificant price, and to enable them to sell it at an enormous advance, leaving the plaintiff and perhaps other creditors wholly unprovided for.

The judgments in favor of Gordon were rendered in May, 1862. The new corporation was chartered about two months earlier; the franchise was sold on execution in June to that new corporation, and in July of the same year, in pursuance of a vote of the stockholders of the Grand Junction Railroad and Depot Company, the conveyance of the franchise and the property to the new corporation was executed and delivered. In other words, the fraud complained of was carried into effect about seven years before the plaintiff filed the present bill. It is not denied that the insolvency of the Grand Junction Railroad and Depot Company and the supposed worthlessness of its franchise and property were notorious, and as well known to the plaintiff as to the creditors generally. There is no evidence that, in the proceedings of Gordon and Lewis, and in the formation of the new company, there was any secrecy or concealment. They apparently were creditors seeking such security as they might be able to obtain from the wreck, and using such means for obtaining security as could be furnished by putting their de-

mands in suit. There is no indication that the plaintiff made any movement whatever towards the recovery of its debt until August, 1865, when it brought an action at law, which action remained upon the docket of the court, undisposed of, till after this bill was brought. In the mean time, but after the franchise and property passed into the hands of the new company, the course of events had been such as greatly to increase the value of the purchase. We may infer from the report that the new company had put the track in good condition for use. The result of certain litigation had been that certain supposed incumbrances upon the property, to the amount of $200,000, had been judicially declared to have no binding force or validity. And as early as the year 1866, the possession of the property and franchise had become sufficiently important to the Boston and Worcester Railroad Company to induce that corporation to purchase the entire property, under the exercise of the right of eminent domain, at such price as a jury, upon regular proceedings, should see fit and just to assess. An opportunity was thus offered to the East Boston Freight Railroad Company to dispose of its entire property at a large advance.

In view of all these facts, and taking into consideration the inevitable publicity of most of the proceedings, the dates at which they occurred, and the ample means of knowledge, or at least the opportunities and inducements for inquiry, which the plaintiff had, we find it impossible to avoid the conclusion that there has been a great delay and neglect on its part to put its claim of right in force. It is a well settled rule in equity, that if a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. *Tash* v. *Adams*, 10 Cush. 252. *Fuller* v. *Melrose*, 1 Allen, 166. Equity regards diligence as one of its important elements, and it discountenances laches as inequitable. Unreasonable delay to prosecute an existing claim is a bar to a bill in equity, especially when the parties cannot be restored to their original position, and injustice may be done. *Peabody* v. *Flint*, 6 Allen, 52. The right of a party injured to rescind a fraudulent transaction remains only for a reasonable time after the discovery of the fraud. *Evans* v. *Bacon*, 99 Mass. 213. *Learned* v. *Foster*, 117 Mass. 365. In one case, after a delay of three

years, and after the land which was the subject of a contract had greatly increased in value, this court refused to sustain a bill for specific performance of a contract to convey, on the ground that the party had not used reasonable diligence. *Boston & Maine Railroad* v. *Bartlett*, 10 Gray, 384. Nothing can call forth a court of equity into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Each case is governed by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court. *Brown* v. *Buena Vista County*, 95 U. S. 157, 160. When a party has been substantially aware of a transfer by a company of its property to another company, even though it has been transacted irregularly and informally, " it is utterly out of the question that he should be at liberty to come after the lapse of years and upset all that has been done." *In re Pinto Silver Mining Co.* 8 Ch. D. 273, 284.

We do not find, on examination of the facts reported, that anything was done which is charged to have been a fraud upon the plaintiff, after the time when the property of the Grand Junction Railroad and Depot Company was appropriated, as the bill charges, by Gordon and his associates to their own use, in 1862. We do not find that any new fact occurred after that time which could enlarge the plaintiff's rights, or give it any new right. The increased value of the property, produced by causes which came into operation after that time, certainly could have no such effect. We cannot avoid the conclusion that the plaintiff slumbered on its rights, and has only been roused into activity by the discovery that the value of the property had in various ways become unexpectedly large. It hardly need be said that this fact does not relieve its long delay of the imputation of the want of reasonable diligence in seeking its remedy Upon this ground, therefore, we must order that the

*Bill be dismissed.*