AMOS R. HARLOW v. THE LAKE SUPERIOR IRON COMPANY.

*Equity—Delay in asserting rights.*

A bill was filed to establish a right to profits from a mine and a division of the property, complainant claiming under a lease of an undivided interest in the mining grant, the remaining interest including the reversionary right having long before passed to

defendant. It was *held* properly dismissed for unconscionable delay, on proof that complainant with full knowledge of what was being done had allowed defendant to expend money and erect costly works in order to develop the mineral resources of the land, without asserting his claim in court for more than twenty years after defendant had acquired its original interest in the property.

Proofs in equity not justified by the bill cannot be regarded.

Appeal from Marquette. Submitted June 13. Decided October 14.

Bill for an accounting, division of profits, sale of premises and distribution of the proceeds. Complainant appeals.

*F. O. Clark, Dan H. Ball* and *John Van Arman* for complainant.

*W. P. Healy, J. J. Storrow* and *G. V. N. Lothrop* for defendant. There are strong presumptions against a claim which plaintiff has knowingly allowed to sleep for 20 years, *Russell v. Miller*, 26 Mich., 1; *Palmer v. Palmer*, 36 Mich., 494; *Riopelle v. Gilman*, 23 Mich., 35; *Toll v. Wright*, 37 Mich., 102; *Loomis v. Brush*, 36 Mich. 47; and where the claim is a mere usufruct for a limited period its value is constantly diminished by defendant's use of the property, *Huff v. McCauley*, 53 Penn. St., 210.

Graves, J. In 1877 we had before us an action of ejectment by complainant against the defendant corporation for an undivided interest in a mining right bargained by Isaiah Briggs to Robert J. Graveraet in the year 1850, and we then held that whatever view might be taken of other questions the thing sued for was not demandable in ejectment. 36 Mich., 105.

After this determination, and in November of the same year, the complainant filed this bill to obtain the judgment of the court in equity on the justice of his claim under said mining grant against the defendant,

and on final hearing on pleadings and evidence the bill was dismissed and an appeal was then taken by complainant.

The controversy was fully and ably discussed on the ejectment record and has been again debated forcibly and critically in its present aspect.

Several of the leading transactions are noticed in the report of the ejectment case, but a clearer view will be obtained of the shape the litigation has now assumed and of the case the complainant has undertaken to establish, if we recall several of the prominent facts in connection with the scheme of the bill.

In substance the bill states that on the 5th of March, 1849, Fisher, Clark, Graveraet and complainant joined together as partners under written articles, which are set forth, to mine and manufacture iron in Marquette county under the name of the Marquette Iron Company; that in August following Clark died, but the three survivors by mutual consent perpetuated the copartnership with the same name and articles; that Isaiah Briggs had pre-empted the southwest quarter of section ten, in township 47 north of range 27 west, in Marquette county, and on the 28th of September, 1850, made the required proof and paid the purchase price to the United States and received a receipt therefor and on the same day granted to Graveraet a lease of the undivided half of the tract for mining purposes, and that Graveraet at the same time assigned the lease to the firm. The lease and assignment are set out at length. That on the 1st of December, 1851, the United States patented the land to Briggs in accordance with the pre-emption right; that this lease continued to belong to the firm known as the Marquette Iron Company until August 20, 1852, at which time Graveraet retired and a division and distribution of the assets were made, Graveraet granting to Fisher and complainant all his interest in the firm property, including the mining right, except in certain parcels of realty turned over to him and having no connection with that

41 MICH.—74.

right. The grants on both sides are set forth. That in 1853 the defendant corporation acquired and still holds all the interest, legal and equitable, in said mining tract, and including the reversionary right which remained in Briggs on his grant to Graveraet in 1850 of said privilege; that Graveraet's assignment of 1852 to Fisher and complainant rendered them tenants in common of the mining right; that they so held it until June, 1855, at which time Fisher granted his undivided half to the Cleveland Iron Mining Company, and which in turn granted it to defendant September 29, 1863. But that complainant has retained his part and remained half owner up to the present time. That complainant notified defendant of his ownership before the latter purchased the Fisher half-interest and before it began making improvements and mining on the premises; that the defendant entered, however, under its purchase of the title and estate existing outside of the lease and prosecuted mining, and after its acquirement of the Fisher half-interest continued operations under that title.

The essence of the claim is that the mining privilege so created by the grant from Briggs to Graveraet on the 28th of September, 1850, and by Graveraet assigned to the firm on the same day, has always since Graveraet's retirement from the firm in August, 1852, and his assignment at that time of his interest to Fisher and complainant, been in the joint ownership of two parties and that complainant has always been one of them. That during the period from August, 1852, to June, 1855, Fisher was the other part owner. That at the last date the Cleveland Iron Mining Company succeeded to his title and retained it until September, 1863, at which time the defendant corporation obtained it and has since held it. That from the acquirement of the main title in 1853 the defendant has invariably asserted and maintained an exclusive right in the premises and refused to acknowledge any right in complainant under said mining grant. That the division of interest has not

been in the thing owned, but in the ownership of the thing.

Although in the view to be taken it is not material, the fact is noticeable that when Briggs gave the so-called lease to Graveraet he was not owner of the land, and so far as appears, not able to confer the privilege described and might never be, and that he expressly postponed the taking effect of the instrument until his pre-emption claim should be confirmed: whilst the only evidence the case exhibits of a confirmation is the emanation of the patent which was not till December 1st, 1851, a year and two months after the execution of the lease to Graveraet and his assignment to the Marquette Iron Company, and several weeks after the conveyance from Briggs to Burt through which the defendant holds.

The only title and interest asserted by complainant are traced to this so-called lease, and whatever may have been the legal or equitable value of such title and interest, he must have acquired them as early as August, 1852, the date of Graveraet's retirement from the Marquette Iron Company and his assignment to Fisher and complainant, and there is no intimation in the bill of any entry or offer to make entry, or of any step towards the exercise of right on the territory under said instrument either by complainant or the Marquette Iron Company, or even of any use or occupation of the land or any part of it by any party adversely to defendant. No disability is set up or pretended.

In August, 1875, a suit in ejectment was brought and dropped. A second ejectment was then prosecuted to an adverse judgment here as already mentioned. No other legal proceedings seem to have been taken.

The statements about engaging counsel would be unimportant if, as is not the case, they were borne out by the evidence.

For more than twenty years next preceding the first ejectment the defendant was notoriously in possession of the territory in question and asserting exclusive ownership.

In order to find out what mineral resources there were and to what extent they would justify outlay, and what methods would be most expedient if not indispensable, the corporation made large expenditures and took serious risks, and as the earlier ventures proved successful and the workings and explorations disclosed the underground conditions and the mineral riches there, and from time to time suggested new and further improvements and appliances to fully utilize them, the company made the desired changes, and in the course of years these various and successive additions and alterations resulted in the establishment of very extensive works at the cost of a great amount of capital.

The complainant resided in the neighborhood and was a spectator of what was going on. He knew what the company claimed and what its position was. He knew that its stock was changing hands from time to time and that the purchasers were not informed of his claim. He knew it was getting credit on the faith that it owned the entire estate. He also knew that the constant drain was steadily exhausting the ore and surely depreciating the property.

None of these considerations nor all of them together were sufficient to prompt complainant to exhibit his claim in a court of justice. An opportunity was offered by Graveraet who filed a bill against him to contest his right to the very interest he now asserts, but he studiously remained silent. In the meantime the statute was wearing away whatever troublesome liabilities of the old partnership concern may have survived the bankruptcy of Fisher, and moreover the persons who were privy to the set of transactions from which it is sought to isolate and preserve the claim made by this bill were passing off by death. A large number have gone, including Heman B. Ely* and Graveraet. That these persons would not be able, if now living, to furnish explanations which are wanting, cannot be assumed.

---

*Defendant claims title to the disputed premises by warranty deed from Heman B. Ely.

The ground of objection we refer to in complainant's case is pleaded by the answer, and it is vital. The only attempt worthy of notice to parry its effect by new matter was the introduction of evidence to show a fugitive entry by complainant in 1857 and marked by the putting up and brief occupation of a log shanty.

This would hardly deserve the importance complainant seems to have attached to it, if it were authorized by the bill. But as already shown there is no foundation for such proof in the case there stated, and it cannot be regarded at all.

The cause is distinctly subject to the principle which according to previous decisions of the court, disentitles the party to the aid of equity. There has been unconscionable delay.

The more than neglect for so many years to bring forward any claim in court when so many interests and transactions about him and connected with him were urging him to do so then, if ever, and when, as he knew, the constantly increasing changes were multiplying what would be grounds of wrong to others in case his claim should finally prevail, and where too as he also knew the truth was growing more and more inaccessible by the death of witnesses, the infirmity of human memory and the accidents which happen to written muniments, cannot be waived by a tribunal which has for one of its chief maxims that nothing can call it into activity but conscience, good faith and reasonable diligence.

The established conception of the doctrine and the conditions demanding its application will find sufficient illustration in the following cases: *McLean v. Barton*, Har. Ch., 279; *Campau v. Chene*, 1 Mich., 400; *Newberry v. Detroit and Lake Superior Iron M. Co.*, 17 Mich., 141; *Jenny v. Perkins*, id., 28; *Russell v. Miller*, 26 Mich., 1; *McVickar v. Filer*, 31 Mich., 304; *Ritson v. Dodge*, 33 Mich., 463; *Loomis v. Brush*, 36 Mich., 40; *Webster v. Gray*, 37 Mich., 37; *Bond v. Hopkins*, 1 Sch. & Lef., 413; *Clegg v. Edmondson*, 8 De G., M. & G.,

787; *Hovenden v. Lord Annesley*, 2 Sch. & Lef., 607; *Castner v. Walrod*, 83 Ill., 171; *Royal Bank of Liverpool v. Grand Junction R. R.*, 125 Mass., 490; *Brown v. County of Buena Vista*, 95 U. S., 157, 159, 160–161; *Sullivan v. Portland &c. R. R. Co.*, 94 U. S., 806; *Harwood v. R. R. Co.*, 17 Wall., 78; *Bowman v. Wathen*, 1 How., 189; *Wagner v. Baird*, 7 How., 234; *Twin-Lick Oil Co. v. Marbury*, 91 U. S., 587, 591, 592, 593; *New Albany v. Burke*, 11 Wall., 96; *Bolton v. Powell*, 15 E. L. & E., 32.

As we are satisfied this ground of objection is conclusive against the complainant it is unnecessary to speak of other points which might lead to the same conclusion.

The decree must be affirmed with costs.

MARSTON and COOLEY, JJ., concurred; CAMPBELL, C. J., did not sit in this case.