C. N. VOLDING, Appellant, v. ANTON GOEPEL et al., Appellees.

LIMITATION OF ACTIONS: Written Contracts—Action to Redeem from Mortgage. When the right of a mortgagee *to foreclose* a mortgage is barred by the statute of limitation, then the right of the mortgagor *to redeem* is foreclosed, and vice versa.

Headnote 1: 41 C. J. pp. 843, 874.

Headnote 1: 17 R. C. L. 719; 19 R. C. L. 457.

*Appeal from Allamakee District Court.*—H. E. TAYLOR, Judge.

DECEMBER 14, 1926.

REHEARING DENIED MARCH 22, 1927.

Suit in equity, praying that a certain deed of conveyance of real estate be declared a mortgage, and that plaintiff have an accounting thereunder, and that he be permitted to redeem there-

from. The principal defense to be considered is that of the statute of limitations. There was a decree dismissing the petition, and the plaintiff appeals.—*Affirmed.*

*William S. Hart,* for appellant.

*G. B. Richter* and *V. S. White,* for appellees.

EVANS, J.—At the time of the original transaction under investigation, the plaintiff was the son-in-law of the principal defendant, Anton Goepel. The deed in question was made in 1892. Sometime prior to that date, plaintiff, then residing in Allamakee County, had purchased by contract 400 acres of land in Hancock County, for a stated price of $7,300. He had made a payment thereon of $1,000. The day of further performance was approaching, and plaintiff had no means wherewith to meet his payments. He was already owing the defendant considerable sums of money. He thereupon conveyed to this defendant such tract of land, subject to the contract. Thereupon, the defendant performed the contract, and perfected his title. One year later, this defendant leased such land to his daughter, the wife of the plaintiff, for a term of three years. Pursuant to such lease, the plaintiff moved upon the property, where his wife died, in June, 1895, leaving four children surviving her. The death of the wife broke up the family. This defendant and his wife took the children of their daughter into their own home, and reared them there for many years. The plaintiff subleased the farm to other renters. On September 1, 1895, the plaintiff and this defendant had a conference, wherein a computation was made of the amount necessary to reimburse the defendant for advancements made by him to the plaintiff. Such amount was agreed to be $12,299. The attitude of this defendant in relation to this deed was that he had never in fact agreed, at the time of or before its taking, that it should be deemed a mortgage; but, on the other hand, that he was always willing to accept from the plaintiff his advancements thereon and to convey the property back to him. Such was his attitude on September 1, 1895. According to his testimony, he orally gave the plaintiff an option to take a reconveyance of the land, upon his reimbursing this defendant at any time within two years from such date. This testimony on his part is denied by the plaintiff. This defendant further testified that, at the

expiration of two years, he had a further conference with him, wherein the plaintiff declined to give further consideration to the question of reimbursement, and purported to abandon all effort to obtain a reconveyance. From that time forth, and for many years, plaintiff exercised no dominion over the land, nor made any recognition of an existing debt, nor made any claim to a reconveyance of the land. In the meantime, this defendant made valuable improvements upon the land, in order to render it suitable for profitable farming. He divided the same into two farms, and built two sets of improvements thereon, at an expense of several thousands of dollars. He never rendered any accounting to the plaintiff; nor did the plaintiff ever demand an accounting until shortly before the beginning of this suit. The plaintiff filed his petition in this case on May 18, 1908. When the notice was served, does not appear. An answer was filed in October of the same year. The case lay dormant upon these pleadings for many years. We are advised by the brief of appellant that the purpose of the filing of the petition was to stop the running of the statute of limitations and to obtain the right to take the testimony of the defendant, he being in frail health. His deposition was taken by the plaintiff in 1910. This defendant died in 1915. The final trial was had and decree rendered in February, 1921. It was submitted to this court on November 16, 1926. These dates mean that 16 years elapsed after the execution of the deed before the petition was filed, and that 13 years more elapsed before the final trial was had in the district court, and more than five years more elapsed before the final submission of the same in this court. The plaintiff, as a witness, has denied some of the material testimony given by the defendant Goepel in his deposition taken on the part of the plaintiff. But such denial was withheld for many years after the deposition was filed, and withheld until after the death of Goepel. This circumstance must weigh against the plaintiff.

Inasmuch as Goepel in 1895 assumed the attitude of consenting to reconvey upon reimbursement for his advancements, we shall accept the theory of the plaintiff that the deed, as originally given, was intended only as security for the advancements made and to be made by Goepel. The important question then arises as to whether plaintiff's suit to redeem and for an accounting is barred by the statute of limitations.

It appears from the evidence that all the notes held by Goepel against the plaintiff at the time of the execution of the deed were past due. No new note was given, nor was there any purported extension of time of payment. If the deed be treated as a mortgage, the statute of limitations would run against Goepel in ten years from the date of the deed. In other words, he could not enforce the collection of the debt after such date, nor foreclose his security because of the running of the statute of limitations. The memorandum of September 1, 1895, signed by Volding might be regarded as effective to toll the running of the statute up to that date. No new note was given at that time, nor was there any purported extension of the time of payment of any note, unless an oral extension is to be found from the testimony of Goepel. If there was no such extension, then the statute of limitations would begin to run from September 1, 1895. It appears, however, from Goepel's testimony that he gave the plaintiff the privilege of making reimbursement within two years and then taking a reconveyance. Did this privilege thus extended toll the running of the statute of limitations on the debt as against Volding? If so, the statute would not begin to run until September 1, 1897. The plaintiff, as a witness, denies that any such privilege was extended to him, or any such talk had. If his testimony at that point be accepted, it fixes September 1, 1895, as the starting point of the statute of limitations. If it were fixed at September 1, 1897, it would make no difference in the result of this case. It is the settled rule in such a case that the statute of limitations will not fully run in favor of the grantee in a deed given for security until it has fully run on the debt in favor of the grantor-debtor. When the statute has fully run in favor of the debtor, so that his creditor cannot maintain an action against him for the recovery of the debt, then it has run reciprocally in favor of the creditor, as against any suit for accounting or for redemption. *Adams v. Holden*, 111 Iowa 54; *Mahaffy v. Faris*, 144 Iowa 220. See, also, *Locke v. Caldwell*, 91 Ill. 417; *Hancock v. Harper*, 86 Ill. 445; and *Sturdivant v. McCorley*, 83 Ark. 278 (103 S. W. 732). In the *Mahaffy* case we said:

"The right to foreclose and the right to redeem must of necessity be reciprocal, and, where the one is barred, the other must also be. There may, of course, be exceptions to this rule,

but they are not present in the instant case. Plaintiff's action here is to redeem, and nothing else. If this be not the situation, he is out of court, for he has not shown himself entitled to the specific performance of a contract to reconvey. The receipt of the rents and profits of the land did not constitute such payments as to toll the statute. *Thomas v. Brewer*, supra. Again, we are satisfied that plaintiff, by reason of his delay in bringing his action, is estopped from having the relief asked. A few quotations from some of the authorities will indicate our views upon this proposition. In *Allen v. Allen*, 47 Mich. 79 (10 N. W. 115), the Supreme Court of Michigan said: 'This bill was filed more than eleven years after the conveyance of which complainants seek to obtain the benefit. There has been no secrecy in defendant's dealings, and no apparent attempt to deceive. The interest conveyed was of small value at the time. It has become of considerable value since, partly through the rapid growth of the city and partly through the good management of defendant. Complainants made no claim to it until the advance was realized, and, if they ever intended to do so, occupied the position of parties waiting to charge a fraud when they could do so with certain profit; but in contemplation of equity they waited altogether too long. Their laches was gross, and it stands wholly unexcused. * * * The decree must be reversed and the bill dismissed.' In *Harlow v. Iron Co.*, 41 Mich. 583 (2 N. W. 913),* Judge Cooley, speaking for the Supreme Court of Michigan said: 'Unreasonable delay to prosecute an existing claim is a bar to a bill in equity, especially when parties cannot be restored to their original position and injustice may be done. * * * In one case, after a delay of three years, and after the land which was the subject of the contract had greatly increased in value, this court refused to sustain a bill for specific performance of a contract to convey, on the ground that the party had not used reasonable diligence. Nothing can call forth a court of equity into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing.' In *Royal Bank v. Railroad Co.*, 125 Mass. 494,† it is said: 'Hav-

---

*This citation is erroneous. The following quotation is taken from Royal Bank v. Railroad Co., 125 Mass. 494.

†This citation is also erroneous. The following quotation is taken from Boston & M. R. Co. v. Bartlett, 10 Gray 384, 386.

ing thus, by their acts and laches for three years, induced the other party to suppose that they have abandoned this contract, it is too late to apply to this court to enforce it.' "

The points made by appellant in resistance to this defense are fully answered in *Adams v. Holden*, 111 Iowa 54. In that case we said:

"Under the contract of defeasance of date February 23, 1875, C. C. P. Holden was to make payment of the amounts secured by the deeds on or before May 1, 1877. Ten years from that time, the grantee's right of action on the debt and to foreclose the grantor's equity of redemption was barred; and the grantee's right of action to redeem was barred at the same time, unless it be for some of the matters pleaded in reply, to which we will hereafter call attention."

On the proposition that the grantee in the deed holds the title in trust, and that the statute cannot run against a trust, we said, in the same case:

"Had the debt which the deeds were made to secure been fully paid, the mortgage character of the transaction would have ceased, and the grantee would thereafter hold that lands in trust; and as trustee he could not plead the statute of limitations for the purpose of securing or holding title, unless he had done some act indicating a disaffirmance of the trust. These, too, are elementary propositions * * * ."

There is some contention by the appellant that Goepel was a resident of Omaha in the last years of his life, and that this tolled the running of the statute. It appears that his wife died in 1907,—some years before he did. Thereafter he lived alternately with his son, in Allamakee County, and with his daughter, in Omaha, preferably spending the winters with his daughter and his summers with his son. That his plans were affected by his infirmities is doubtless true, and the fact that he lengthened the time of his stay with his daughter as his infirmities increased, falls short of proving that he intentionally changed his residence. Letters from him while at the daughter's home indicate the contrary. Moreover, we find nothing in the pleadings of the plaintiff which sets up such nonresidence as an avoidance of the statute of limitations. Indeed, the statute had fully run before the wife's death.

On the whole record, also, we think that the larger merits

of the case are clearly against the plaintiff. On September 1, 1895, the amount of his indebtedness to Goepel was clearly in excess of the value of the land. He knew thereafter of the valuable improvements which Goepel was putting upon the land. In December, 1908, many years before the final trial of this case, Goepel made distribution of his property among his children, including this land. He impressed a trust thereon in favor of plaintiff's children for $7,300. He lived seven years thereafter, without any further sign of aggression on the part of the plaintiff. The case presented by the plaintiff on its merits does not appeal to the judicial sense of equity. In view of our conclusion above stated, we have no occasion to consider the question of mere laches on plaintiff's part, or that of his intentional prolongation of the pendency of the litigation.

The decree entered below is, accordingly, affirmed.—*Affirmed.*

De Graff, C. J., and Albert and Morling, JJ., concur.