Sol L. Cohen *vs.* Gustave E. Bailly.

Suffolk. November 15, 1928. — January 23, 1929.

Present: Rugg, C.J., Crosby, Carroll, Wait, & Sanderson, JJ.

*Contract,* What constitutes, Consideration, Construction, Of indemnity. *Guaranty. Equity Jurisdiction,* To reach and apply equitable assets, Laches, Statute of limitations. *Limitations, Statute of.*

A suit in equity involved an instrument under seal whereby the defendant, in consideration of the plaintiff's investing money and taking stock in a certain corporation, "offered and proposed" that he would save the plaintiff harmless from all losses "that may be sustained by . . . [the plaintiff] in said company"; and that "I [the defendant] shall be responsible to . . . [the plaintiff] with my [stock] interest" in the corporation. The instrument contained the words "accepted by . . . ," but bore only the signature of the defendant and that of a witness thereto. On the same date that such instrument was executed by the defendant, the plaintiff paid in money to the corporation and received shares of stock; and shares of stock were issued to the defendant bearing a provision in handwriting that they were "issued subject to a guaranty executed to . . . [the plaintiff] by . . . [the defendant] of same date and to be incorporated with said guaranty as a pledge." *Held,* that

(1) The furnishing of money to the corporation and the purchase of stock therein by the plaintiff, and the execution and delivery of the instrument in writing by the defendant, appeared to be one and the same transaction; those acts by the plaintiff constituted an acceptance of and valid consideration for the defendant's offer contained

in the instrument, and a valid contract of indemnity-thereupon arose
between the parties;

    (2) The defendant's obligation under the contract was not limited
to his interest in the corporation, but was to indemnify the plaintiff
against all losses by reason of the plaintiff's investment; the provision
in the contract as to the defendant's shares was merely a collateral
agreement whereby the shares were pledged as security for the per-
formance by the defendant of his primary obligation.

The suit in equity above described was brought in April, 1927, to reach
and apply the defendant's interest in a certain partnership in satis-
faction of a claim by the plaintiff against the defendant under the
contract of indemnity. It appeared that the corporation was un-
successful and was dissolved, its affairs finally having been wound up
in January, 1919; that the plaintiff's shares were then worthless;
that at that time the plaintiff told the defendant that he had sustained
a loss and asked the defendant to make it good, but that the de-
fendant said "he was working and had nothing"; and that from then
until the bringing of the suit the plaintiff had no communication with
the defendant and received no payment from him. Nothing ap-
peared to show that during that period the plaintiff could have ob-
tained payment by an action at law, nor the time when the defend-
ant became interested in the partnership, nor that the defendant was
prejudiced by the delay in bringing the suit. A master to whom the suit
was referred found, "In so far as it is a question of fact," that the plain-
tiff had been guilty of laches. A judge of the Superior Court thereafter
ruled that laches was not a defence to the suit. *Held*, that, in the
circumstances, the suit having been brought within the statutory
period of limitation applicable to an action at law upon the contract,
the ruling by the judge was correct.

BILL IN EQUITY, filed in the Superior Court on April 23,
1927, and afterwards amended.

The suit was commenced by a writ of summons and attach-
ment dated April 20, 1927. The bill, material facts found
by a master to whom the suit was referred, and decrees
entered by order of *Weed*, J., are described in the opinion.
The defendant appealed from such decrees. The evidence
was not reported.

    *D. J. Lyne*, (*J. P. Rooney* with him,) for the defendant.

    *E. R. Greenhood*, for the plaintiff.

    CROSBY, J. This is a bill in equity, filed April 23, 1927,
to reach and apply the defendant's interest in a partnership,
doing business under the name of the Bailly Manufacturing
Company, in payment of a debt alleged to have arisen out
of a contract of indemnity. The contract is evidenced by

an instrument under seal, dated December 18, 1907, as follows: "I, Gustave E. Bailly, in Consideration of Mr. Sol. L. Cohen, investing various amounts of money at different occasions, in to the Somerset Knitting Company of Boston, hereby offer and propose, in case of Sol. L. Cohen withdrawing from said Company or said Company dissolving, that I, in such cases, above mentioned, shall cover all losses that may be sustained by The Somerset Knitting Company or by Sol. L. Cohen, in said company. That I shall be responsible to Sol. L. Cohen with my interest of thirty (30) shares in the above Company numbered 2, 3, and 4. That I am willing to protect Sol. L. Cohen and to keep him free from all losses that may occur in the above Company at any time. In case of withdrawal of Sol. L. Cohen from the above Company or of the dissolution, I am willing to accept for my interest in the Company all machinery and tools as my interest may then appear, after paying first to Sol. L. Cohen his entire investment in the Company, without any loss to said Sol. L. Cohen of any kind. The machinery at the time of withdrawal or dissolution to be valued at the same price as when they were affixed or placed in said Company. In witness whereof I Gustave E. Bailly, do this Eighteenth day of December, 1907, place my hand and seal. (Signed) Gustave E. Bailly (Seal) witness. (Signed) Jos. F. Goulart accepted by . . . ." The case was referred to a master who made certain findings.

To determine the issues of law presented, it is necessary to refer to some of the findings made by the master. He found that by reason of the agreement of guaranty or indemnity "the plaintiff claims that the defendant became obligated to reimburse the plaintiff for losses sustained by him on advances made by the plaintiff to or in behalf of the Somerset Knitting Company, and on his original investment in the company"; that "Prior to 1907 the defendant and one Knight were engaged as partners in the business of manufacturing knitted goods"; that in 1907 Knight decided to withdraw, and thereafter the defendant and the plaintiff orally agreed that a corporation should be organized to take over the business, the plaintiff to pay in $1,500 in cash and

the defendant to transfer to the corporation machinery valued at $1,500; and that at the same time it was agreed that "the defendant's interest in the corporation should be subordinate to the plaintiff's"; that the defendant testified the plaintiff asked him if he would guarantee that the business was good, and the defendant replied in the affirmative, and stated that he could guarantee what he possessed, "the machinery and fixtures, which he could get if he could sell the manufactured stuff" owned by the former partnership, and the plaintiff accepted the proposition; that on December 9, 1907, the Somerset Knitting Company was organized as a corporation, one Carver, a nephew of the plaintiff and his attorney, attending to the incorporation; that subsequently the defendant became president, the plaintiff treasurer, and the directors were the defendant, the plaintiff and Carver; that the plaintiff paid in the $1,500, the merchandise was bought by the corporation, Knight was paid off, and the defendant transferred the machinery to the corporation; that on December 18, 1907, certificates of stock were issued as follows: to the plaintiff thirty shares of preferred stock in three certificates for ten shares each; to Carver one share of preferred stock; to the defendant thirty shares of the common stock by three certificates of ten shares each; that each certificate issued to the defendant contained the following in handwriting on the back thereof: "These shares are issued subject to a guaranty executed to Sol L. Cohen by Gustave E. Bailly of same date and to be incorporated with said guaranty as a pledge"; that the plaintiff's stock was issued to him in consideration for the $1,500 paid in, the defendant's for the machinery transferred, and the stock to Carver was for legal services; that on the same date that these certificates were dated the agreement of guaranty or indemnity before referred to was executed by the defendant; that in addition to the signatures the words "Eighteenth" and "accepted by" are in handwriting, and were on the instrument when it was signed; that it was duly sealed, and "The defendant's signature to this instrument was not obtained by fraud or duress on the part of the plaintiff or any one representing him"; that the business conducted by

the company was unprofitable; that the plaintiff from time to time made advances of money to the company and negotiated loans by others to the company; that on September 28, 1915, the company ceased doing business, and that the corporation was thereafter dissolved under Spec. St. 1918, c. 109.

The master further found that on January 5, 1919, the plaintiff's thirty shares of preferred stock were worthless and have been so ever since; that in January, 1919, the plaintiff met the defendant and told the latter that he had sold all the assets of the company and had lost $5,000 and "it was up to the defendant to make the loss good," and the defendant said "he was working and had nothing"; that from that time until the bringing of this suit the plaintiff has had no communication with the defendant and the defendant has paid him no part of the amount claimed by the plaintiff to be due him from the defendant.

In view of his subsidiary findings the master found that the plaintiff, in taking no action to prosecute his claim against the defendant upon the contract hereinbefore referred to until this suit was brought, had not used reasonable diligence in the assertion of his rights; that his delay is unreasonable and without excuse, there is no reason why, if he so chose, he could not have proceeded promptly after the winding up of the affairs of the corporation in January, 1919, and that "In so far as it is a question of fact . . . the plaintiff has been guilty of laches." The master further found that the defendant is a member of a copartnership, consisting of himself and one Cassidy, which owns real estate, machinery, stock in trade and accounts receivable.

The defendant moved for the entry of an interlocutory decree confirming the report; the plaintiff filed five objections to the report and moved that it be recommitted. The judge of the Superior Court, who heard the case on the plaintiff's motion to recommit the master's report, denied the motion to recommit, overruled all the plaintiff's objections to the report except the first, which was waived, and ruled respecting the fifth, that "if the plaintiff has a right of action for breach of the alleged agreement under seal, such right of action accrued not later than January, 1919, and suit was

brought, in any event, within the statutory period of limitation. Laches, as found by the master, relates solely to the failure of the plaintiff to prosecute with reasonable diligence his claim against the defendant for a breach of said agreement, and not to the relief sought against the defendant's interest in the partnership known as the 'Bailly Manufacturing Company' to satisfy his alleged debt. Deeming that laches is not a defence in these circumstances, the plaintiff's fifth objection is sustained on the third ground therein alleged." The third ground referred to is "That this being a suit to recover a common law debt, the defence of laches does not lie, where the common statutes of limitations do not bar the action." In accordance with an order to that effect an interlocutory decree was entered confirming the master's report as so modified.

The judge found and ruled that "Upon the facts found by the master and the inferences of fact reasonably to be drawn therefrom, . . . the plaintiff's investment of $1,500 in the preferred stock of the Somerset Knitting Company was in acceptance of, and in reliance upon, the defendant's undertaking set forth in paragraph 4 of the Report." The judge also made the following rulings: "Taking into account the circumstances surrounding said undertaking as found by the master, I rule that the defendant thereby agreed, in case the plaintiff withdrew from the company or the company was dissolved, to protect and indemnify the plaintiff from any personal liability for losses sustained by the company and for losses sustained by the plaintiff by reason of his investment in the company, and after first paying the plaintiff his entire investment in the company, to accept for his (defendant's) interest in the company the machinery and tools. Moreover, I rule that said undertaking related solely to the investment then made by the plaintiff in the stock of the company and such further investment as the plaintiff might thereafter make therein." A final decree was ordered to be entered adjudging that the defendant is indebted to the plaintiff in the sum of $1,500 with interest from the date of the filing of the bill, and that the plaintiff is entitled to reach and apply in satisfaction thereof the defendant's interest

in the partnership known as the Bailly Manufacturing Company. A final decree was entered as so ordered.

The issues of law presented by the record will be considered in the order in which they are argued in the defendant's brief.

1. It is contended that the instrument under seal dated December 18, 1907, set forth in paragraph 4 of the master's report, and upon which the plaintiff relies, is merely an offer of guaranty which never was accepted by the plaintiff because it recites "I . . . hereby offer and propose"; that it is an offer to be accepted by a counter promise made within a reasonable time, reliance being placed upon the fact that there is a place reserved for the signature of the plaintiff, and the words "accepted by" with a line for his signature are found at the foot of the document; that it was not signed by him, and no binding contract between the parties was made as the offer never was accepted. We are unable to agree with this contention. It is plain that the instrument is an offer of indemnity if the plaintiff invested his money in the Somerset Knitting Company, and if such investment was actually made the conditions which would make the covenant binding have been fulfilled. From a careful examination of the facts as found by the master and the reasonable inferences to be drawn therefrom, the intent may well have been found to be an offer of indemnity, to be effective as a contract upon the investment by the plaintiff of moneys in the Somerset Knitting Company. It is manifest that on the reported facts "this was not a proposition which was to become a contract only upon the giving of a promise for the promise, and it was not necessary that the plaintiff should accept it in words, or promise to do anything before acting upon it. It was an offer which was to become effective as a contract upon the doing of the act referred to." *Bishop* v. *Eaton,* 161 Mass. 496, 499. *Martin* v. *James Cunningham, Son & Co.* 231 Mass. 280, 285. *John McClure Estate, Inc.* v. *Fidelity Trust Co.* 243 Mass. 408, 412. The purchase of the stock and the furnishing of money to the corporation constituted an acceptance of the offer and was a valid consideration for the contract. *Bishop* v. *Eaton, supra.* It appears

that the contract of guaranty or indemnity is dated December 18, 1907, and the certificates of stock issued to the plaintiff bear the same date. Where, as here, it appears that the act called for by the undertaking of guaranty occurs on the same day that the undertaking is signed the natural inference is that the two acts are one transaction. *Kempton* v. *Coffin,* 12 Pick. 129, 131. It follows that a binding contract of indemnity or guaranty arose upon the delivery of the instrument by the defendant to the plaintiff, conditioned upon the investment in the Somerset Knitting Company, and loss sustained by reason thereof.

2. It is argued by the defendant that if the instrument upon which the plaintiff relies be regarded as a binding contract, its scope is limited to the defendant's interest in the Somerset Knitting Company. The basis of this contention is the language contained in the second sentence, which is as follows: "That I shall be responsible to Sol. L. Cohen with my interest of thirty (30) shares in the above Company numbered 2, 3, and 4." The contention, that unless the guaranty is so limited the second sentence is meaningless, is unsound. In the first sentence it is recited that in case of the plaintiff withdrawing from the company or its dissolution the defendant "shall cover all losses" by reason of the plaintiff's investment; in the third sentence, "That I am willing to protect Sol. L. Cohen and to keep him free from all losses that may occur in the above Company at any time"; and in the fourth sentence that the defendant is "willing to accept for my interest in the Company all machinery and tools as my interest may then appear, after paying first to Sol. L. Cohen his entire interest in the Company without any loss to said Sol. L. Cohen of any kind." It is plain that the primary obligation of the defendant was to indemnify the plaintiff against loss of any kind by reason of his investment. The language upon which the defendant relies relates only to a collateral undertaking under which the shares were pledged merely by way of collateral security for the primary obligation. This construction is in accordance with the rule that where unequivocal clauses or sentences in an instrument are seemingly repugnant they should, if reasonably possible,

be so construed as to give force and effect to each of them. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 10, and cases cited. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404, 414. *Fleischman* v. *Furgueson,* 223 N. Y. 235. Williston on Contracts, § 611. As there is no ambiguity appearing on the face of the instrument, it was unnecessary to resort to parol evidence to determine its meaning.

3. The final contention of the defendant is that, if the written instrument relied on by the plaintiff be considered a contract by which the defendant assumed unlimited personal liability, the plaintiff is barred from equitable relief by the master's finding that he has been guilty of laches. In this connection the master found "that the plaintiff in taking no action to prosecute his claim against the defendant upon the contract in writing herein set forth until this suit was brought has not used reasonable diligence in the assertion of his rights . . . ," and that "In so far as it is a question of fact, I find on the facts herein reported that the plaintiff has been guilty of laches." The trial judge found that this finding of laches "relates solely to the failure of the plaintiff to prosecute with reasonable diligence his claim against the defendant for a breach of said agreement, and not to the relief sought against the defendant's interest in the partnership known as the 'Bailly Manufacturing Company' to satisfy his alleged debt"; and ruled that laches was not a defence to the bill. He found and ruled upon the facts found by the master and the inferences of fact reasonably to be drawn therefrom that the plaintiff's investment of $1,500 in the preferred stock of the Somerset Knitting Company was in acceptance of, and in reliance upon, the contract of indemnity. He further ruled that by the contract the defendant agreed, in case the plaintiff withdrew from the company or it was dissolved, to protect and indemnify him from any personal liability for losses sustained by the company, and for losses sustained by the plaintiff by reason of his investment in the company; and, after first paying the plaintiff his entire investment, to accept for his (the defendant's) interest in the company the machinery and tools; and that said undertaking related

solely to the investment then made by the plaintiff in the stock of the company and such further investment as he might thereafter make therein.

The plaintiff is seeking the equitable relief provided by G. L. c. 214, § 3 (7). This clause, as was said in *Stockbridge* v. *Mixer*, 215 Mass. 415, at page 418, "combines in a single proceeding two different matters or steps in procedure, one at law and the other in equity. The first is the establishment of an indebtedness on the part of the principal defendant to the plaintiff. The second is the process for collecting the debt, when established, out of property rights which cannot be reached on an execution. In essence the first is an action at common law and the second a well recognized head of relief in chancery." If the plaintiff fails to prove his debt the bill must be dismissed. "If, however, he establishes the indebtedness, then he will be in position to take advantage of the second part of the statute, which relates solely to relief and which is equitable in its nature."

In the present case, in dealing with the facts found by the master, this court stands as did the trial judge, and it is our power and duty to draw inferences, as did the trial judge, unaffected by the conclusions reached by him. *Anagnosti* v. *Almy*, 252 Mass. 492, 500. The evidence is not reported but upon the facts found by the master it is plain that the plaintiff's rights are not barred by laches. We are of opinion that the judge correctly construed the master's finding respecting laches. It is plain that, as this suit is brought upon an agreement under seal, such ground for equitable relief did not accrue until January, 1919, and the suit was brought within the statutory period of limitation.

In view of the facts found by the master, the court rightly sustained the plaintiff's fifth objection to the report on the third ground, namely: "That this being a suit to recover a common law debt, the defence of laches does not lie, when the common statutes of limitations do not bar the action." When a party comes into court with a legal right, such right may be enforced by a bill in equity, and mere delay, provided it does not extend beyond the statute of limitations, is not a bar. *Moore* v. *Dick*, 187 Mass. 207, 212.

It cannot be doubted that the equitable defence of laches is available as against a bill to reach and apply. *Royal Bank of Liverpool* v. *Grand Junction Railroad & Depot Co.* 125 Mass. 490. *Stockbridge* v. *Mixer, supra.* If an action at law is not barred by a statute of limitations, the circumstances may be such that courts of equity independently of any statute of limitations will decline to give relief to a person who has slept upon his rights and shows no excuse for his delay in asserting them. *Phillips* v. *Rogers*, 12 Met. 405, 410, 411. *Royal Bank of Liverpool* v. *Grand Junction Railroad & Depot Co., supra. Sawyer* v. *Cook*, 188 Mass. 163, 168. *Speidel* v. *Henrici*, 120 U. S. 377. There is no hard and fast rule as to what constitutes laches. Each case depends upon its peculiar facts. In the case at bar, it is found that in January, 1919, the plaintiff told the defendant "that he had lost $5,000, and that it was up to the defendant to make the loss good" and that the defendant replied "he was working and had nothing." There is no finding that the plaintiff by bringing an action at law could have collected the amount due him from the defendant, nor is there anything to show at what time the defendant became a partner in the firm known as the Bailly Manufacturing Company.

Upon the findings of the master we are of opinion that the plaintiff could not properly be found to have been lacking in due diligence either in failing to bring an action at law on the contract against the defendant or in failing to bring this suit in equity at an earlier date. There is nothing to indicate that the defendant has been prejudiced by the delay or that the rights of other persons have been affected thereby. The judge was justified in finding that laches was not a defence. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36. *Hawkes* v. *Lackey*, 207 Mass. 424, 430. *Mascari* v. *Mascari*, 255 Mass. 92, 98. The cases relied on by the defendant are not at variance with what is here decided.

The interlocutory and final decrees must be affirmed, with costs.

*Ordered accordingly.*