ALEXANDER MAHAFFY, Appellant, v. JOSHUA FARIS, WILLIAM I. FARIS and MRS. WILLIAM I. FARIS, Appellees.

**Parol evidence.** Parol evidence is competent to show the making of a written contract which has been lost, and to show that a deed absolute in form was intended as a mortgage.

**Mortgages:** REDEMPTION: WHO MAY PLEAD LACHES. The purchaser of land from one holding the absolute title as security, even though he has paid no part of the incumbrances thereon which he assumed as the consideration for the conveyance, but who went into possession thereunder and made extensive improvements upon the property without notice of the character of his grantor's

title, may plead laches in an action to redeem from the deed under which his grantor held.

**Same:** ADVERSE POSSESSION: REDEMPTION.  Where a grantee of land as security goes into possession, and there has been no repudiation of the relation of the mortgagor and mortgagee until after a conveyance by the grantee to a third person, adverse possession does not exist prior to the conveyance; but where, as in this case, grantor allowed the grantee to remain in possession for a long series of years, making valuable improvements, and until the property increased in value from practically the amount of the indebtedness to a much larger sum, and without asserting any interest therein or demanding an accounting for rents, an action to redeem can not be maintained.

**Same:** PERIOD OF REDEMPTION: LIMITATIONS.  Where no time is fixed by the terms of a contract within which to redeem from a conveyance of land as security, the law will presume that the redemption was to be made within a reasonable time, which is to be determined from all the circumstances; and in no case will it extend beyond the period of the statute of limitations.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

FRIDAY, OCTOBER 22, 1909.

SUIT in equity to secure a reconveyance of eighty acres of land in Des Moines County, Iowa, upon payment of the indebtedness which it is claimed plaintiff was owing, for an accounting, and, if a reconveyance could not be made, then for a judgment for the value of the property.  The trial court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*Seerley & Clark* and *La Monte Cowles,* for appellant.

*Poor & Poor* and *Blake & Wilson,* for appellees.

DEEMER, J.—On December 27, 1887, plaintiff conveyed the premises in controversy, consisting of eighty acres

of land, to one Nancy Faris by ordinary deed of bargain and sale, without covenants of warranty. This deed was recorded March 17, 1888. Before the commencement of this suit Nancy Faris, the grantee, died, and this action was commenced against Joshua, her husband, William I. Faris, to whom Nancy had conveyed the land before her death, and Mrs. William I. Faris, his wife. It is claimed that plaintiff deeded the land to Mrs. Faris pursuant to a written agreement with her husband, one of the defendants, whereby the plaintiff was to deed his interest in the property by quitclaim deed to said Joshua, who was then to attend a master's sale of the property, which was pending, bid in the property, and hold the title until such time as plaintiff was able to redeem by paying the amounts advanced by Joshua. Nancy Faris was plaintiff's sister, and it is claimed that the deed was taken in her name, instead of that of her husband. It is also claimed that an agreement to this effect was made in writing which has since been lost, destroyed, or surreptitiously taken from plaintiff, so that no copy thereof can be had. It was further alleged that Joshua was to bid in the land at master's sale in his own name or that of his wife, Nancy, as trustee. It is further charged: That the land was conveyed to Nancy Faris, pursuant to this agreement; that she and her husband went into the possession thereof and have since received the rents and profits, and that Joshua bid in the property at master's sale as agreed. Plaintiff alleged that he was able and willing to pay all amounts advanced by either Joshua or his wife, and he asked for an accounting, a reconveyance of the property and other equitable relief. Defendants admitted the deed to Nancy Faris, that they, or some of them, had held possession of the land since some time in the year 1887; that in January of the year 1897 Nancy Faris agreed to convey the land to defendant William I. Faris, her son, as his share of the estate belonging to his parents; that William immediately went into possession under this agreement, and that,

in consideration thereof, a deed was made to him (William) on December 10, 1903. Defendants also pleaded adverse possession of the land since the year 1888. They also averred that plaintiff's action was barred by the statute of limitations, and further pleaded that they expended large sums of money upon the land without knowledge or notice of plaintiff's claim, and in the belief that Nancy was the unqualified owner thereof at all times until she conveyed to William, and that plaintiff is now estopped from asserting any rights in and to the land. The trial court denied plaintiff any relief, and this appeal presents several questions for our consideration.

In the first place, it is said that plaintiff's claim amounts to a trust which cannot be established by parol, and that, if there ever was a written agreement, which is denied, it was not binding upon the deceased grantee, Nancy Faris. Other points made for defendants are: (a) That they held title by adverse possession; (b) that plaintiff's action is barred by the statute of limitations; and (c) that plaintiff is estopped, by his laches and by his conduct, from asserting any title to the land. Plaintiff does not bring this action on the theory that he had a contract for the repurchase of the land from Joshua and his wife, and that he has paid or offered to pay the purchase price. His claim is that the deed to Nancy Faris was, in fact, a mortgage, that she paid nothing for the property, and that the deed was made as security for obligations entered into by her and her husband in order to obtain the money wherewith they should secure title to the land which was then owned by plaintiff— although title stood in the name of another and the land was so heavily incumbered that plaintiff could not redeem it.

We are satisfied, from a perusal of the record, that the land was conveyed to Mrs. Faris without any consideration passing from her to plaintiff; that whatever she or her husband advanced to clear the title was secured by a mortgage upon the land, and that, aside from what they expended in

placing improvements upon the land, they never have made any investment therein. We are well satisfied that, as a part of the transaction whereby. Nancy Faris obtained title to the land, a contract of defeasance or to reconvey upon payment of what the Faris's were compelled to advance upon the land was entered into by and between plaintiff and Joshua Faris, and that in virtue thereof, and by reason of its execution, the deed was made to. Nancy Faris. The making of the contract is denied by defendant Joshua Faris; but the clear preponderance of the testimony is with the plaintiff on this proposition.

Parol testimony was admissible to show not only the making of the written contract which is lost or destroyed, but also to show that the deed to Mrs. Faris, while absolute in form, was intended to be a mortgage. This is hornbook law, needing no authorities in its support.

1. PAROL EVIDENCE.

The deed was made to Mrs. Faris on December 27, 1887, and she and her husband went into the possession of the land in March of the year 1888. They or their children, or those claiming under them, have been in the absolute possession of the land ever since. They have either farmed and cultivated it, receiving the income therefrom, or have rented it, receiving the rents and profits during all this time. On December 10, 1903, the farm was conveyed by Nancy Faris and husband to their son, defendant William I. Faris. This deed was not filed for record until June 5, 1906, which was shortly before the death of Mrs. Faris. The expressed consideration therefor being the payment, by William, of a mortgage in the sum of $2,400 upon the real estate, which mortgage represents, according to the testimony, all the money that either Mrs. Faris or her husband put into the land. William went into possession at about the time the deed was executed, and has been in·either the actual or constructive possession thereof ever since. It is not shown that

2. MORTGAGES: redemption: who may plead laches.

William had any notice of the true character of the deed from plaintiff to Mrs. Faris. The deed to him was made as his share in his parents' estate, and after taking the same he made rather extensive and expensive improvements upon the property. At no time did plaintiff make any claim to him that he (plaintiff) had any interest in the land. It may be that, as the land was an advancement made by Mr. and Mrs. Faris to their son William, and as he has paid no part of the mortgage incumbrance which he assumed as a consideration for the deed, he is not a good-faith purchaser for value, and that, under such claim, he has no rights other than his mother would have had had she survived and been made a defendant. However, in virtue of the money expended by William Faris, in the way of making improvements upon the land and in assuming the payment of the mortgage against it, he stands in a position to avail himself of plaintiff's long delay in bringing this action, which, as we have seen, is not for specific performance, but to redeem the land.

Finding, as we have, that the conveyance originally made to Mrs. Faris was a mortgage, plaintiff is entitled to an accounting and to redeem, unless his action be barred by the statute of limitations, or it be found that, by reason of his long delay in bringing suit, and his conduct generally, he has estopped himself from asking such relief. We do not think that defendants have shown title to the land by adverse possession. There was no repudiation of the trust or of the mortgage character of the deed until the making of the deed to William, and ten years had not run from that date when this action was commenced; but we are constrained to hold that, under the peculiar facts shown by this record, plaintiff's action is barred, both by statute and by estoppel. When plaintiff conveyed the land it was not worth to exceed $2,600. The indebtedness which Mr. and Mrs. Faris then obligated themselves to pay was nearly, if not quite, this amount. They and their grantees have expended large sums in mak-

3. SAME: adverse possession: redemption.

ing improvements upon the land. During the nearly twenty years since the conveyance was made the land has increased in value until it is now worth from $8,000 to $8,500. For over nineteen years plaintiff made no claim of any kind to the land. He asked no accounting until he brought this suit. He did not commence this action until after the death of Mrs. Faris. Had the land decreased, instead of increased, in value, and the Faris's had brought suit to compel plaintiff to repay the money they had expended, plaintiff could not have been made to pay. The statute of limitations would clearly have barred their action against the plaintiff. Under this state of facts plaintiff should not be allowed to assert his claim. *Thomas v. Brewer,* 55 Iowa, 227; *Adams v. Holden,* 111 Iowa, 54.

Whilst we are satisfied that there was a written contract made, as claimed by plaintiff, there is nothing to show when, by the terms of that contract, plaintiff was to redeem the land. Surely this right would not exist forever. As no time was fixed, the law says it should be a reasonable time, and this reasonable time is ordinarily a question of fact to be determined from all the circumstances. In no event should it, in our opinion, run beyond the period of the statute of limitations; that is to say, in the absence of a provision in the contract fixing the time, the action to redeem should be commenced within ten years from the date of the making of the contract. *Nash v. Land Co.,* 15 N. D. 566 (108 N. W. 792) ; *Thomas v. Brewer, supra; Smith v. Foster,* 44 Iowa, 442; *Albee v. Curtis,* 77 Iowa, 644; *Crawford v. Taylor,* 42 Iowa, 260. The right to foreclose and the right to redeem must of necessity be reciprocal, and, where the one is barred, the other must also be. There may, of course, be exceptions to this rule, but they are not present in the instant case. Plaintiff's action here is to redeem, and nothing else. If this be not the situation, he is out of court, for he has not shown himself entitled to the specific performance of a contract to reconvey. The receipt of the rents

and profits of the land did not constitute such payments as to toll the statute. *Thomas v. Brewer, supra.*

Again, we are satisfied that plaintiff, by reason of his delay in bringing his action, is estopped from having the relief asked. A few quotations from some of the authorities will indicate our views upon this proposition.

4. SAME: period of redemption: limitations.

In *Allen v. Allen,* 47 Mich. 79 (10 N. W. 115), the Supreme Court of Michigan said: "This bill was filed more than eleven years after the conveyance of which complainants seek to obtain the benefit. There has been no secrecy in defendant's dealings, and no apparent attempt to deceive. The interest conveyed was of small value at the time. It has become of considerable value since, partly through the rapid growth of the city and partly through the good management of defendant. Complainants made no claim to it until the advance was realized, and, if they ever intended to do so, occupied the position of parties waiting to charge a fraud when they could do so with certain profit; but in contemplation of equity they waited altogether too long. Their laches was gross, and it stands wholly unexcused. . . . The decree must be reversed and the bill dismissed." In *Harlow v. Iron Co.,* 41 Mich., 583 (2 N. W. 913), Judge Cooley, speaking for the Supreme Court of Michigan said: "Unreasonable delay to prosecute an existing claim is a bar to a bill in equity, especially when parties cannot be restored to their original position and injustice may be done. . . . In one case, after a delay of three years, and after the land which was the subject of the contract had greatly increased in value, this court refused to sustain a bill for specific performance of a contract to convey on the ground that the party had not used reasonable diligence. Nothing can call forth a court of equity into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive, and does nothing." In *Royal Bank v. Railroad Co.,* 125 Mass., 494, it is said: "Having thus, by their acts and laches

for three years, induced the other party to suppose that they have abandoned this contract, it is too late to apply to this court to enforce it." In *B. & M. R. R. v. Bartlett,* 10 Gray, 384, the same court said: "A court of equity applies the rule of laches according to its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court. . . . Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation of suits in this court. The law of laches, like the principle of the limitation of actions, was dictated by experience and is founded in a salutary policy. The lapse of time carries with it the life and memory of witnesses, the muniments of evidence and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose and welfare of society. A departure from it would open an inlet to the evils intended to be excluded."

Following these rules, it is quite clear to our minds that plaintiff's action is barred, and for this reason the decree must be, and it is, *affirmed.*