H. R. SWENSEN, Appellee, v. UNION CENTRAL LIFE INSURANCE COMPANY, Appellant.

No. 44127.

JUNE 21, 1938.

Maher, Meloy & Hankens, for appellee.

Lew McDonald and Stipp, Perry, Bannister & Starzinger, for appellant.

HAMILTON, J.—At the threshold of this case, we are met with a motion to dismiss the appeal on the ground that Rules 15, 16, and 17, relating to the preparation of the abstract of the record, and Rule 30, relating to assignment of errors, were not complied with by the appellant.

The abstract is quite cumbersome, containing 232 pages with most of the record of testimony set out by question and answer. This is sometimes necessary to enable the appellate court to properly understand the particular complaint or error assigned. However, unless such necessity exists, this method of preparing an abstract has been uniformly condemned. Manifestly, no inflexible rule can be laid down. Attorneys, like other human beings, do not always agree; some have the knack of expressing an idea in a few words; others require an entire page. Even judges are not entirely free from this human frailty. As we view it, much of the record could have been presented just as understandingly in narrative form. In the preparation of its brief and argument, appellant used little care in pointing out the page and line of the abstract where the matters referred to might be found. In fact, reference is never made to the line or lines of the various pages of the abstract; reference being simply to the page or pages and, in order to find the particular matter, the writer of the opinion would necessarily have to read the entire page or pages to which reference is made. In a 232-page abstract, references so indefinite greatly increase the burden and difficulty of the court. The very purpose of numbering the lines is to avoid this extra burden.

This is a law case, and we should not be required to examine the entire abstract or to read an entire page or several pages in order to find particular portions of the record bearing directly on the error assigned. A failure to aid the court by observing this simple requirement cannot be justifiably excused. Eleven separate and distinct errors are set out in the appellant's brief and argument. In oral argument, counsel for appellant waived all except the first three and indicated, both in his oral argument and in his printed brief and argument, that his first assignment covers the all-important question in the case. As this first assignment involves, mainly, the construction of the contract and the deed, necessitating but slight examination of the voluminous record, we have deemed it ad-

visable to overlook the failure of the appellant to fully comply with Rule 30 as to this one particular assignment and to give the matter consideration, but the motion to dismiss, as to all other assignments, will be and is sustained.

Preliminary to the examination of the legal question involved, brief reference to the facts seems necessary. The Union Central Life Insurance Company owned a certain 240-acre farm in Cherokee County, Iowa. It first sold this farm to the Bennett brothers, G. V. and C. R. Bennett. They lost the farm through foreclosure proceedings; the company again obtaining the title by sheriff's deed in 1929. Thereafter, about the month of October, 1932, the company made a second sale of this farm by written contract to Bennetts. Later, this contract was forfeited by statutory procedure, terminating about the month of April 1934. The company then negotiated with Bennetts, who were in possession, to lease the premises, and on the 22d day of October, 1934, a written lease was signed covering the period ending February 28, 1935, agreed rental being $240. There had evidently been some talk concerning still another purchase of the farm by Bennetts for this lease contained the following provision:

"It is agreed that in event that the parties of the second part (Bennetts) purchase this property before January 1st, 1935, that the amount collected under the lease as rent will be applied on the purchase price."

This lease was recorded on October 27, 1934.

At this point in the preliminary history, the plaintiff, H. R. Swensen, was approached by an agent of the company and solicited to purchase this farm. Swensen was a real estate broker, extensively engaged in the real estate business, and had handled and sold several farms for the defendant company. An agreement finally was reached by which Swensen agreed to purchase the farm for the consideration of $15,000 and a written contract was drawn up which bears date of October 30, 1934; $450 was paid in cash; $1,550 to be paid December 1, 1934, "at which time deed will be given and mortgage executed for $13,000 due in ten years with five per cent semi-annual interest from March 1, 1935." The contract further provided:

"Possession to be given upon the delivery of deed or con-

tract, subject to all leases, rent contracts, existing tenancies, or rights of parties in possession, lease expiring March 1, 1935. "Rental for the year 1934 to be paid to Company."

The note and mortgage were duly executed by Swensen and the cash payments made. Deed was delivered to Swensen, December 17, 1934, but, owing to the misspelling of the grantee's name, the deed was returned to the company for correction and redelivered January 7, 1935. The deed contained the following recital:

"And the said The Union Central Life Insurance Company does hereby covenant with J. R. Swensen that the said premises are free and clear from all incumbrances by, from, through, or under the said grantor, and that it will forever warrant and defend the same unto the said H. R. Swensen *against the lawful claims of all persons,* claiming by, from, through or under the grantor herein, *except as against all rights under existing tenancies or rights of parties in possession, all leases, rent contracts, * * *.*" (Italics ours.)

Bennetts did not surrender possession March 1, 1935, the expiration date under the lease. Swensen, without saying anything to the company, on March 16, 1935, instituted in the justice court an action against Bennetts of forcible entry and detainer. Bennetts set up, as their defense in that action, a claim of ownership under the second written contract with the company, which contract was in the name of G. V. Bennett, who was married and whose wife refused to sign the mortgage loan papers when they attempted to obtain a loan, and they contended in this forcible entry and detainer suit, that the notice of forfeiture of this second written contract was a friendly means of legally terminating the contract with G. V. Bennett so that another contract could be entered into by his brother, C. R. Bennett, who was unmarried, and that, under this oral agreement and understanding, they held title and right of possession. Although title was squarely put in issue, neither side raised the question of jurisdiction and the case went to trial to a jury, resulting in verdict for Bennetts. Swensen, under advice of his counsel, then notified the company of his difficulties with the Bennetts. The company took no action. Next, Swensen, on July 23, 1935, commenced suit, aided by attach-

ment against Bennetts, to collect the rental value of the farm for the year 1935. The evidence showed the rental value was $1,200, but, although he had sufficient personal property attached to have paid the entire $1,200, this suit was compromised for the sum of $519, out of which he was to pay certain costs reducing the actual rental received. On August 29, 1935, Swensen again sued Bennetts in equity to quiet his title which resulted in a decree in Swensen's favor, the court quieting title in Swensen as of March 1, 1936. We assume this date, March 1, 1936, was inserted in the decree for the reason a settlement had been made with Bennetts, covering the rental for the year 1935 and entitling them to remain in possession until that date.

In the meantime, Will Peterson, to whom Swensen had leased the premises in December, 1934, being unable to get possession, brought suit March 1, 1935, against Swensen for damages and recovered judgment for $400 and cost. The instant suit brought by Swensen against the Union Central Life Insurance Company, the vendor, is to reimburse Swensen for costs and attorney fees paid out in these several law suits, for loss of his own time, and personal expenses in seeking to gain possession of the farm, to recover difference between rental value and the amount of rent collected, and to recoup for the $400 judgment and costs which he was compelled to pay for being unable to put his tenant, Peterson, in possession. The trial court directed a verdict for plaintiff to the extent of the $400 Peterson judgment and costs and submitted to the jury the question of fixing the amount as to other items of damages. The jury assessed the additional amount of damages at $970.95. Motion for new trial and exceptions to instructions were made and overruled; defendant has appealed.

The original petition was in three "divisions" of four "counts" each, in which damages are asked specifically for all the above items. Stripped of the vast heap of debris, resulting from various and sundry legal attacks upon the pleadings and proof, there finally remains but the one issue, namely, breach of the original written contract of sale and the one major legal question raised is: Were all the provisions of the contract merged in the subsequently issued deed of conveyance?

The law in this state applicable to such a controversy is quite well defined. In the case of Huxford v. Trustees, 193

Iowa 134, at page 136, 185 N. W. 72, at page 74, this court said:

"It is broadly true that a contract to convey land becomes presumptively merged in the subsequent deed executed in performance thereof, and this is so even though the terms and conditions of the deed be not identical with those of the contract. It is always competent for parties to a contract by mutual agreement to change its terms and agreements, and this may be done by means of subsequent deed as effectively as in any other manner. This rule, however, has its qualifications. Though it be generally true that, in all matters of conflict between them, the deed speaks and the contract is silent, yet for some purposes the contract may be and is kept alive and enforcible. For instance, if the deed be uncertain and ambiguous in its own terms, resort may be had to the antecedent contract, as an aid to construing the terms of the deed. If a mistake in the deed be alleged and reformation be sought, the contract becomes competent as evidence on that question. Likewise, if the contract contain collateral agreements or conditions which are not incorporated in the deed and which are not inconsistent with the terms of the deed as executed, the contract will be deemed to live, for the purpose of the enforcement of such collateral agreements or conditions. Saville v. Chalmers, 76 Iowa 325, 41 N. W. 30; Carey v. Walker, 172 Iowa 236, 154 N. W. 425; Gray v. Van Gordon, 187 Iowa 835, 174 N. W. 588; Mathias v. Mathias, 167 Iowa 81, 149 N. W. 87. In the first cited case, a warranty deed had been executed and accepted. It was held that the grantee was not thereby precluded from suing upon a warranty of the quality of the land. In that case, the antecedent contract of sale was in parol. It said therein:

" 'It is not to be supposed that the whole contract between the parties is incorporated in the deed made by the grantor in pursuance of, or as the consummation of, the sale of land. There are many things pertaining to the contract which it is manifest are never inserted in the deed. Evidence of the parol contract does not, therefore, affect the deed, or change it in any respect.'

"In the Carey case, we said:

" 'But we do hold that, where a contract provides for the conveyance of the real estate upon the payment of a cer-

tain sum, and gives to the purchaser certain rights, collateral to and independent of the conveyance, the making of the deed does not merge the collateral or independent agreement into the deed, so that they cannot be shown and enforced.'

"In the Gray case, we said:

" 'The execution of the deed presumably is the consummation of the contract, and parties thereafter look only to the deed for conditions of the transfer; and, where merger of the contract into the deed is denied, the burden of proof rests on the party so denying, to show that a merger was not intended.' "

Further quoting from Gray v. Van Gordon, supra (page 838 of 187 Iowa, page 589 of 174 N. W.) :

"The contract, in the absence of any showing to the contrary, must be found to have been merged in the deed. Davenport v. Whisler, 46 Iowa 287; Kirkwood v. Perry Town Lot & Imp. Co., 178 Iowa 270, 159 N. W. 782; McCormick v. Merritt, 131 Iowa 160, 105 N. W. 428. The first of these cases quotes with approval from Rawle on Covenants for Title, 605:

" 'When the deed of conveyance has been executed, the contract is then executed; any inconsistencies between its original terms and those of the deed are, in general, to be explained and governed solely by the latter, into which the former is merged, and by which the parties are thereafter to be bound, and the purchaser's only relief, either at law or in equity, from defects or incumbrances, depends, in the absence of fraud, solely upon the covenants for title which he has received.'

"The subject is well stated in Houghtaling v. Lewis, 10 Johns, (N. Y.) 297:

" 'Articles of agreement for the conveyance of land are, in their nature, executory, and the acceptance of a deed in pursuance thereof is to be deemed, *prima facie,* an execution of the contract, and the agreement thereby becomes void, and of no further effect. Parties may, no doubt, enter into covenants collateral to the deed, or cases may be supposed when the deed would be deemed only a part execution of the contract, if the provisions in the two instruments clearly manifested such to have been the intention of the parties. But the prima facie presumption of law arising from the acceptance of a deed, is that it is an execution of the whole contract; and the rights

and remedies of the parties, in relation to such contract, are to be determined by such deed, and the original agreement becomes null and void. This appears to me to be a sound and salutary rule, and conformable to the doctrines of this court in the case of Howes v. Barker, 3 Johns Rep. 506. The chief justice, in that case, said he could not surmount the impediment of the deed which the plaintiff had accepted from the defendant; and that he thought himself bound to look to that deed as the highest evidence of the agreement of the parties.' ''

■   Both appellant and appellee rely upon the foregoing statement of the law. Appellee grants the general rule, but, contends he comes within the exception above mentioned ''if the contract contain collateral agreements or conditions which are not incorporated in the deed and which are *not inconsistent with the terms of the deed* as executed, the contract will be deemed to live, for the purpose of the enforcement of such collateral agreements or conditions.'' (Italics ours.) Appellee points out that in the case of Gray v. Van Gordon, 187 Iowa 835, 174 N. W. 588, this court quoted with approval from the case of Houghtaling v. Lewis, 10 John (N. Y.) 297 as follows:

''Articles of agreement for the conveyance of land are, in their nature, executory and the acceptance of a deed in pursuance thereof is to be deemed, *prima facie,* an execution of the contract, and the agreement thereby becomes void, and of no further effect. Parties may, no doubt, enter into covenants collateral to the deed, or cases may be supposed when the deed would be deemed only a part execution of the contract, if the provisions in the two instruments clearly manifested such to have been the intention of the parties.''

Appellee contends, and the trial court agreed, that by the terms of the contract appellant agreed to deliver possession March 1, 1935, and this conclusion is arrived at by oral testimony which appellee says was admissible because there is an ambiguity in the contract as to when possession was to be given due to this fact that in the printed form, the words are ''Possession to be given upon delivery of deed or contract'' while the words added by typewriting, ''lease expiring March 1, 1935'', indicated possession was to be given March 1, 1935.

We fail to detect any ambiguity in the language of the

contract as to the time possession was to be given. It says in plain English that possession is "to be given upon delivery of the deed" subject to "all leases," etc. The ambiguity is as to whether the parties intended to make a contract by which appellant agreed to deliver possession subject only to this one particular lease, "expiring March 1, 1935" found in the type-written portion added to the printed form or whether it was "subject to all leases, rent contracts, existing tenancies, or rights of parties in possession" as contained in the stereotyped printed form, and as to this matter oral evidence would be competent if it were not for the fact that the deed contains provisions covering this same matter and as to such matter it would seem the conclusion is inevitable, under the rule above announced, that the provisions of the deed would govern. And to permit proof that what the parties intended by the contract provision was to give possession subject only to the one specific lease would create a variance between the contract and the deed touching the same matter, and all authorities agree that if the contract provisions are at variance with those in the deed, the contract is not admissible. This being true, we are driven to the conclusion that on this question there was a merger and no recovery may be had on the contract, and oral testimony was not admissible to establish a contract at variance with the deed. Neither was it competent to establish by parol that possession was to be given March 1, 1935, in direct contradiction of the express language in the contract that possession was to be given when the deed was delivered. This would amount to establishing a contract by parol at variance with a written contract concerning the same subject matter.

Since the covenants in the deed were limited to all lawful claims, etc., "except as against all rights under existing tenancies, or rights of parties in possession, all leases, rent contracts * * * " it follows that if the Bennetts, who were parties in possession, had any rights they were excepted from the covenants of warranty, and, likewise, if their claim were that of interlopers such claim would not be a "lawful claim" by, from, through, or under the appellant and would, likewise, be excepted from the covenants of warranty and the plaintiff must fail, his rights being those arising under the deed and not under contract provisions on the same subject matter at variance with the terms of the deed.

It follows that the judgment of the trial court in permitting recovery on the contract is erroneous and is accordingly reversed and remanded for judgment in harmony with this opinion.—Reversed and remanded.

STIGER, C. J., and ANDERSON, DONEGAN, and SAGER, JJ., concur.

MITCHELL, J., takes no part.