Edward W. COLLINS and Winifred L. Collins, Appellants,

v.

Delaine P. ISAACSON, Appellee.

No. 52846.

Supreme Court of Iowa.

April 9, 1968.

John K. Petersen, Red Oak, and Getscher & Getscher, Hamburg, for appellants.

Genung & Rogers, Glenwood, for appellee.

GARFIELD, Chief Justice.

Edward W. and Winifred L. Collins, husband and wife, brought this action, tried in equity, to recover possession of an 80 acre farm occupied by defendant Delaine P. Isaacson and damages for withholding it following plaintiffs' attempt to forfeit a lease and option to purchase held by defendant. There was a decree for defendant on the grounds plaintiffs' title was for security only and good cause to forfeit defendant's rights was not shown. On plaintiffs' appeal we affirm.

I. On September 20, 1963 Donald Isaacson purchased the land on contract from one Bergstrom for the agreed price of $17,000. $1700 was paid on the execution of the contract, the balance of $15,300 was to be paid March 1, 1964 on delivery of deed and abstract of title. The purchaser became ill prior to March 1 and was unable to complete the purchase. Edward W. Collins, whom we call plaintiff, unless otherwise indicated, was a livestock buyer who had dealt with Donald and knew his son Delaine, the defendant. Collins told defendant "If you're in any trouble with that farm, I have money."

In late February, 1964 defendant and his father asked plaintiff if he still had the money available to "rent" on the farm and he said he did "and we said we couldn't get it any other place and would lose our $1700 if we didn't have it by March 1. Mr. Collins said he could get the money but he would have an option on the farm and it was to me (defendant) only and if Don entered it in any way through controversy, calling on the telephone, or raising cain, the thing was void, so he had Mr. Hilton draw this option up and it was signed."

Pursuant to this agreement Donald and his wife (defendant's parents) executed and delivered to plaintiff on February 24, 1964 a quitclaim deed to the farm and assignment of the real estate contract. Plaintiff completed the purchase of the farm from Bergstrom, the vendor, and took title thereto by warranty deed from him. On February 28 plaintiff made and delivered to defendant a written lease to the farm for three years commencing March 1, 1964 at an annual rent of $1400 evidenced by three promissory notes payable November 1 of each of the three years.

Also on February 28 plaintiff gave defendant a written option to purchase the 80 acres during the term of the lease for $15,300 plus all costs and expense of plaintiff in consummating the sale under the option if exercised. The written option also provides that if it is exercised the rent is to be pro-rated to the time of the purchase. It will be recalled $15,300 is the amount plaintiff paid Bergstrom as the balance of the purchase price.

The lease contains these provisions: " * * * any controversy caused by one Donald E. Isaacson by and between him and Edward W. Collins on any subject concerning this lease shall automatically cancel and forfeit said lease. Further, the party of the second part (defendant) agrees to negotiate and confer with the party of the first part solely and alone, without interference by said Donald E. Isaacson.

"In the event the second party shall fail to make the payments contemplated in this contract, or perform any of the covenants herein, at the times hereinabove specified, the first party, may, at their option, declare this contract forfeited by serving 30 days notice of forfeiture as provided for by the laws of Iowa, and if the second party shall

fail to pay said sum or sums, or perform said conditions, in default within said 30 day period, this contract shall stand forfeited and all payments made hereunder shall become the property of the first party as liquidated damages for the breach of contract."

The trial court held and plaintiff virtually conceded in argument the quitclaim deed, assignment of the land contract, plaintiff's advancement of the balance of the purchase price and the lease-option agreements were all parts of the same transaction which took place during the last week in February.

In late October 1964 plaintiff accepted a check signed by defendant's father for the agreed rent for the first year of the leasehold. About May 1, 1965 plaintiff was displeased because defendant and his father refused to sell cattle to plaintiff at the price he offered to pay. It is not claimed the Isaacsons were under any obligation to sell to plaintiff. It also appears that in February 1965 plaintiff took offense because defendant and his father attempted to combine the farm in question with one owned by the father in order to secure a more favorable corn base from the county ASC office. The favorable ruling was not obtained because plaintiff, as landlord of the 80 acres, refused to consent thereto. We do not understand defendant or his father acted illegally or improperly in applying for the favorable ruling.

On September 27, 1965 plaintiff mailed to defendant a notice of termination of the lease because of claimed violation by defendant of the condition, quoted supra, that any controversy caused by his father "on any subject concerning this lease" should cancel and forfeit it. The notice called upon defendant to return the premises to plaintiff on March 1, 1966. On October 18, 1965 defendant paid plaintiff the rent due November 1.

On March 3, 1966 plaintiffs caused to be served upon defendant a second notice, entitled "Notice of Forfeiture of Real Es-

tate", declaring the lease forfeited for his alleged failure to comply with certain of its terms and conditions and for permitting waste to be committed. This notice does not assert any violation of the condition to which the first notice refers—that defendant's father had caused a controversy with plaintiff on a subject concerning the lease.

The testimony, including that given by plaintiff (Mrs. Collins did not testify), makes it clear, and his counsel admitted in argument, the basis for the attempt to forfeit defendant's rights was the one referred to in the first notice. Some of defendant's acts referred to in the second notice were with plaintiff's consent or he testified they were unimportant.

The trial court found after carefully reviewing the record there was no breach by defendant at any time of any material term or condition of the lease-option undertaking and plaintiffs wholly failed to establish they were entitled to exact a forfeiture thereof.

We conclude it is not at all clear that either of the two principal matters involving defendant's father, plaintiff's unsuccessful attempt to purchase cattle from the Isaacsons and their application to the ASC for an enlarged corn base by combining the 80 acres with another farm, was a controversy caused by the father on a "subject concerning this lease", as the lease provides. We will say more about this later.

In any event, during the time allowed in the lease (see the provision quoted supra) and the first notice of forfeiture, defendant made a good and sufficient tender to plaintiff (See section 538.6 Codes 1962, 1966) of the purchase price of $15,300, plus the pro rata rental on the land, reasonable legal fees, cost of revenue stamps for the deed, continuance of the abstract of title to date and recording fees incurred by plaintiff in conveying the property, all in accordance with terms of the option agree-

ment. It was stipulated this tender should be deemed a continuing one.

The trial court decreed plaintiffs' title was in the nature of an equitable mortgage, defendant had not breached the lease or option agreement, and that upon payment to plaintiffs of the sums tendered plus $1480 rent due November 1, 1966, between the time of trial and entry of the decree, plaintiffs must convey the land to defendant and deliver to him an abstract of title showing merchantable title in plaintiffs subject only to defendant's interest in the land. Plaintiffs' petition was dismissed.

II. Plaintiffs-appellants assert two propositions relied on for reversal: (1) Claimed error in finding defendant did not breach any material term or condition of the lease-option agreement and plaintiffs have failed to establish their right to exact a forfeiture thereof. (2) The decree is contrary to law in holding the lease-option agreements constitute a single contract in the nature of an equitable mortgage.

In considering these propositions, especially the first, on this review de novo we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f)7, Rules of Civil Procedure.

III. Plaintiff's argument under the first of these propositions refers to three provisions of the lease, other than the one about a controversy with defendant's father, it is claimed defendant violated. As previously indicated, it is clear plaintiff did not regard any of them as important and that what triggered the attempt to forfeit the lease were the incidents regarding the cattle purchase and, previously, the application to the ASC.

■ Plaintiff testified: "What I objected to was Donald Isaacson attempting to change my corn base to his land." Again, "The manure accumulation was not of importance to me. Only one thing was important as I have already mentioned.

\* \* \* I refused to sign it (consent to the A.S.C.) and prepared notice that he was meddling. \* \* \* Had Donald Isaacson not been involved in the thing, they (defendant and wife) would have had the land long ago."

Regarding the Isaacsons' refusal to sell the cattle to plaintiff he testified: "The next morning I went out and they had sold the cattle to someone else. I said 'Well, if Donald is into it that is the last dealings we will have. I am going to cancel the thing.' "

As before indicated, if we give weight to the trial court's fact findings, we are not persuaded defendant violated the condition of the lease that his father should not *cause* any controversy between him and plaintiff *on a subject concerning the lease.*

Further, the lease prepared by plaintiff provides, as quoted supra, that a forfeiture could be declared if defendant failed to make the payments contemplated therein or to perform any of its covenants, by serving a 30 day notice of forfeiture, provided defendant "shall fail to pay said sum or sums, or perform said conditions, in default within said 30 day period \* \* \*." It stands admitted that within the 30 day period defendant made a good and sufficient tender to plaintiff of all sums due him under the lease-option agreement in the event the option were exercised. Plaintiff's right to declare a forfeiture of the agreement therefore did not mature.

■ This from Roshek Realty Co. v. Roshek, 249 Iowa 349, 358, 87 N.W.2d 8, 13–14 has some application here: "It is a familiar saying that equity abhors a forfeiture. Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699, 703 ('\* \* \* forfeitures are not favorites of either law or equity, and when they are enforced, those claiming them should show that the equities are clearly on their side.'); 19 Am.Jur., Equity, sections 84, 86; 32 Am.Jur., Landlord and Tenant, section 872; 30 C.J.S.

Equity § 56a; 51 C.J.S. Landlord and Tenant § 102 ('Forfeitures \* \* \* are not favored by the courts.') See also Heiple v. Reinhart, 100 Iowa 525, 528, 69 N.W. 871." See also 27 Am.Jur.2d, Equity, section 74, pages 596–597, citing the Roshek opinion.

We think plaintiff's first proposition relied on for reversal is without merit. We reach this conclusion somewhat more readily because of our conclusion as to plaintiff's second proposition for reversal about to be considered.

IV. Plaintiff's argument in support of his second proposition stresses the claim his title could not be in the nature of an equitable mortgage because, it is said, defendant owed him no debt to be secured thereby.

Before considering this specific point we may say that many Iowa decisions hold it is proper to show by parol a warranty deed was in fact intended as security only and upon payment of the debt the debtor is decreed to be the legal, as well as the equitable, owner of the property. Fort v. Colby, 165 Iowa 95, 144 N.W. 393, is a leading case of this kind. In arriving at the intention of the parties courts look behind the form of the instruments to the real relationship between the parties. The instruments will be read in the light of the surrounding circumstances and the practical construction the parties themselves placed thereon. Guttenfelder v. Iebsen, 230 Iowa 1080, 1084, 300 N.W. 299, 301–302 and citations.

In order that a deed be held a mortgage the evidence must be clear, satisfactory and convincing. Brown v. Hermance, 233 Iowa 510, 514, 10 N.W.2d 66, 68, and citation; Greene v. Bride & Son Construction Co., 252 Iowa 220, 227, 106 N.W.2d 603, 607–608, and citations.

In connection with what has just been said another rule has application. Where an absolute deed is accompanied by a contract to reconvey on specified conditions and under the evidence a doubt exists as to whether the conveyance was intended to be absolute or as security for a debt, it will be construed to be a mortgage. Brown v. Hermance, supra, 233 Iowa 510, 514–515, 10 N.W.2d 66, 68 and citations.

On facts generally similar to those here the Brown opinion states: "It is well established that where one party purchases real estate, and borrows all or a portion of the purchase price from another party, the vendee may have the title pass direct from the vendor by warranty deed to said third party, and may establish by parol that the same is, in fact, a mortgage, and held by the said third party solely as security for the purchase price so advanced for the vendee. (Citations)"

Davis v. Wilson, 237 Iowa 494, 499, 21 N.W.2d 553, 557, also under a similar factual situation, repeats the pronouncement just quoted and adds this which is a direct answer to plaintiff's main argument that defendant was not indebted to plaintiff:

"The debt of the real owner to the title-holder need not exist by covenant but may be implied. Here, if Davis requested Wilson to purchase the 200 acres for Davis' benefit and Wilson did so purchase it, an obligation on the part of Davis to repay Wilson the amount advanced by him with interest would necessarily be implied. This would establish the relation of debtor and creditor as fully as if Wilson had loaned the money direct to Davis and the latter had in turn paid Breece (the vendor) the purchase price. (Citations)"

Swartz v. Stone, 243 Iowa 128, 133, 49 N.W.2d 475, 477, is to the same effect.

It may be well also to repeat this from Davis v. Wilson, supra: "Under our repeated holdings parol testimony is admissible, notwithstanding sections 11285 (Statute of Frauds) and 10049 (creation of express trust in real estate) Code 1939, to show the two deeds to Wilson were given

for security only. (Citations)." The two code sections just referred to are 622.32 and 557.10 Code 1966.

Here, defendant was expressly obligated to pay plaintiff what the lease refers to as rent rather than interest on the sum plaintiff advanced to Bergstrom (vendor under the contract) for defendant's benefit. A similar situation in Brown v. Hermance, supra, 233 Iowa 510, 515, 10 N.W.2d 66, 68, was held not to disprove the occupant's equitable ownership. See also Jones v. Gillett, 142 Iowa 506, 512, 118 N.W. 314, 316, 121 N.W. 5 and citations; Bigler v. Jack, 114 Iowa 667, 673, 87 N.W. 700.

We have no hesitancy in holding, under the applicable rules, that the parties intended plaintiff's title to be security for repayment to him by defendant of the sum plaintiff advanced to Bergstrom for defendant's benefit. Defendant's obligation to pay plaintiff what the lease designates annual rent furnished ample consideration for plaintiff's advancement of the balance of the purchase price. We have frequently pointed out the vital question in a case of this kind is the intention of the parties regardless of the form of the instruments.

That the parties originally intended plaintiff was advancing the balance of the purchase price to enable the Isaacsons to save their equity in the land, without any thought of becoming the real purchaser himself is scarcely open to question. Plaintiff suggested he had the money to help the Isaacsons complete the purchase if they were in trouble. After trying without success to borrow the money elsewhere the Isaacsons deemed it necessary to accept plaintiff's offer of help. There has never been any conflict of interest between the Isaacsons over this matter, so far as shown. The lease-option agreement ran to defendant rather than to his father at plaintiff's wish. Under the circumstances we view this as an unimportant detail.

The record contains a number of indications both plaintiff and defendant regarded the relationship between them as that of creditor and debtor and plaintiff's title as being held for security. On several occasions during the period of the lease-option agreement plaintiff informed defendant, his wife or mother, he would like to have the option exercised then, he "wanted out," he "was tired of going on with the thing," and "they had nothing to lose." Defendant's mother testified without denial that twice after the spring of 1965 plaintiff told her "he just wanted his money," although the option ran to March 1, 1967.

It is obvious that if plaintiff's claim of forfeiture were upheld the Isaacsons would lose the down payment of $1700 on the farm and the money and effort defendant put into improving it. It appears without dispute that $900 was spent for tiling, of which $200 was paid by "the government." Defendant also spent a total of $2500 to $3000 for conservation dams, dirt moving, the tiling "and so forth." In addition to what is just mentioned, defendant spent $500 or $600 improving the farm dwelling.

It would seem inequitable for plaintiff to reap the benefits from these improvements by upholding his claim to a forfeiture. Under our decision he will receive the money he advanced to "help" the Isaacsons, with a liberal return on his investment in the nominal form of rent, plus repayment of all expense incurred. We think this is all plaintiff is equitably entitled to receive.

The principal precedent plaintiff cites to support his second proposition is Ross v. Automobile Ins. Co., 228 Iowa 668, 676–677, 292 N.W. 813. It involves a quite different factual situation than we have here and does not conflict with our decision or anything said herein.

Affirmed.

All Justices concur.