Jan LOVLIE and Elsa M. Lovlie,
Appellants,

v.

Charles R. PLUMB and Bettie L.
Plumb, Appellees,

v.

Michael HANRAHAN and Alan Kline,
Cross-Petitioner Defendants-Appellees.

No. 2–57196.

Supreme Court of Iowa.

Feb. 16, 1977.

Crawford & Clarke, by Thomas J. Clarke, Des Moines, for appellants.

Hegland, Newbrough, Johnston & Brewer, by James A. Brewer, Ames, for appellees.

Jerry L. Jones, Ames, for cross-petitioner, defendants-appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

RAWLINGS, Justice.

By equity action commenced November 24, 1972, plaintiffs Jan and Elsa M. Lovlie (Lovlies), seek accounting by defendants

Charles and Bettie Plumb (Plumbs), regarding real estate to which plaintiffs claim legal title contrary to defendants' asserted ownership. By counterclaim defendants pray title be quieted in them subject to mortgagee rights of Ames Building and Loan Association (Ames) and a contract for sale of the property to cross-defendants Michael Hanrahan and Alan Kline (Hanrahan and Kline). Trial court entered decree adverse to plaintiffs and they appeal. We affirm.

The involved property is described as: "Lot Ten (10) in Teagarden's Second Subdivision in the Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) of Section Twenty-three (23), Township Eighty-three (83) North, Range Twenty-four (24), West of the 5th P.M., Story County, Iowa, and locally known as: 3816 Emerald Drive, Ames, Iowa."

In 1958, defendants (Plumbs) obtained title to the above described premises by warranty deed. In 1962, they sold same on contract to Russ and Dixie Mahan, who in turn assigned their interest, in 1965, to plaintiffs (Lovlies).

In 1966, defendants borrowed an amount equal to their equity in the property from Ames for which a mortgage was given. Plaintiffs made this transaction possible by subordinating their interest in the purchase contract to the mortgage.

The interest rate, monthly payments and unpaid balance on defendants' mortgage-related note were the same as on plaintiffs' purchase contract. Defendants directed plaintiffs to make their contract payments to Ames in order that they be applied directly on the mortgage debt.

In 1967, plaintiffs' attorney recommended the contract be consummated by obtaining a deed from defendants with plaintiffs to attendantly assume the mortgage balance. Defendants' attorney recommended a quitclaim deed be employed for the purpose because of the existing Ames' encumbrance. Due to the fact defendants would remain liable on the outstanding mortgage, it was suggested a reversionary right be incorporated in the deed for benefit of defendants in event plaintiffs failed to fulfill the mortgage obligations. As trial court noted, "There is no showing [the parties] were in disagreement as to the method to be utilized in consummating the contract."

The quitclaim deed from defendants to plaintiffs provided, in relevant part:

"This deed is executed and delivered upon the condition that the said grantees, Jan Lovlie and Elsa M. Lovlie, will assume and pay the unpaid balance of a mortgage due Ames Building and Loan Association * * *, *and in the event the said grantees fail to so perform, then title to the above described real estate shall revert to the said grantors.*" (emphasis supplied).

After delivery of said quitclaim deed plaintiffs discussed same with their attorney. They were thereby advised it was incumbent upon them to make the mortgage payments in order to retain their interest in the property. No objection was voiced by plaintiffs as to the above quoted reversionary clause.

In 1968, plaintiffs experienced substantial financial problems. In July of that year the Lovlies vacated the premises, leaving behind their furniture and some personal belongings. Defendants soon learned plaintiffs were in substantial default on the Ames' mortgage. Thereafter, defendants unsuccessfully attempted to locate plaintiffs.

August 16, 1968, defendants physically re-entered the property and at the same time posted notice thereof on the front and rear doors of the house. They also filed an affidavit of re-entry in the Story County Recorder's office.

August 20, 1968, defendants satisfied the delinquent mortgage payments, overdue insurance premiums and real estate taxes owing. They subsequently paid all mortgage obligations, insurance premiums and taxes. Defendants also assumed responsibility for maintenance, repair and management of the premises.

September 17, 1968, plaintiffs received from defendants' attorney a letter request-

ing removal of all furnishings from the house. Accompanying this letter, forwarded to plaintiff Lovlie by his brother-in-law, were copies of the quitclaim deed, a letter from mortgagee's attorney and a copy of the recorded re-entry affidavit. Over a period of four years thereafter plaintiffs took no affirmative action.

August 19, 1970, defendants sold the property on contract to cross-defendants Hanrahan and Kline. This contract is current and outstanding.

By plaintiffs' aforesaid action, commenced November 24, 1972, they allege defendants illegally assumed control of the premises and improperly directed tenants then in possession of a basement portion of the residence to pay rent directly to defendants. Plaintiffs further assert legal title to the property upon the basis of defendants' quitclaim deed, *supra.*

By counterclaim defendants seek to quiet title in themselves by virtue of right acquired under the above noted reverter clause. As above noted, this title is allegedly subject only to the Ames' mortgage and Hanrahan-Kline purchase contract.

By amendment to their answer, defendants affirmatively pled the defense of waiver. Plaintiffs responded by asserting (1) defendants had no legal title to the property; (2) the quitclaim deed lacked consideration; and (3) plaintiffs were entitled to forfeiture notice under the contract.

After hearing on the merits trial court dismissed plaintiffs' petition for accounting; quieted title to the property in defendants subject to (1) the Ames Building and Loan Association mortgage, and (2) the contract purchase rights of cross-petitioners Michael Hanrahan and Alan Kline.

Plaintiffs here raise these issues for review:

(1) The reverter clause in the quitclaim deed from Plumbs to Lovlies is ambiguous and should be construed as an equitable mortgage.

(2) The reverter clause contained in the quitclaim deed between Plumbs, as grantors, and Lovlies, as grantees, is void for lack of consideration.

(3) The legal effect of the quitclaim deed with reverter clause between Plumbs as grantors and Lovlies as grantees is to restore the parties to their original legal position before the deed was given.

(4) Lovlies' claim is not barred by laches.

(5) The doctrine of waiver does not apply to this case.

I. First considered is plaintiffs' claim to the effect the quitclaim deed (reverter clause) is ambiguous and should be construed as creating an equitable mortgage. In this respect, it is contended the evidence reveals plaintiffs agreed only to indemnify defendants to the extent of their personal liability and plaintiffs did not forego their redemption rights.

■ It is well settled a transfer of title absolute on its face, if intended as security alone, will be deemed a mortgage. And such intent may be shown by parol. In the same vein, an equitable redemption right attaches necessarily and conclusively to any grant given as security. Also, equity forbids an irredeemable mortgage. See *Koch v. Wasson*, 161 N.W.2d 173, 176 (Iowa 1968). However, if a deed is to be construed as a security instrument, the supportive evidence must be clear, satisfactory and convincing. See *North v. Manning Trust & Savings Bank*, 169 N.W.2d 780, 784 (Iowa 1969); cf. Rendleman, "Absolute Conveyance as a Mortgage in Iowa", 18 Drake L.Rev. 197 (1969); "Equitable Mortgages in Iowa", 44 Iowa L.Rev. 716 (1959).

■■ In determining intent of the parties, courts look behind the form of an instrument to ascertain the actual relationship between participants. Furthermore, a document will be read in light of surrounding circumstances and given such practical construction as is placed thereon by the concerned parties. See *Collins v. Isaacson*, 261 Iowa 1236, 1243, 158 N.W.2d 14 (1968); *Fort v. Colby*, 165 Iowa 95, 144 N.W. 393 (1913).

Mindful of the foregoing, we look now to the record at hand. It reveals the quitclaim

deed from defendants to plaintiffs was requested by the latter in order to terminate their contractual relationship with the former. As a means by which to protect themselves in event of future personal liability on the Ames' mortgage, defendants requested insertion of the above quoted reverter clause. Plaintiffs were willing to assume said mortgage subject to terms of the deed in return for their desired immediate conveyance of title. They discussed the legal effect of the reverter clause with both their attorney and defendants.

Addressing ourselves now to specifics of the question at hand, we first note the instant transaction created no direct obligation by plaintiffs to defendants.

"On this point, we said in *Hinman v. Sage*, supra, 208 Iowa 982, 984, 221 N.W. 472, 473: 'A prerequisite universally recognized is the existence of a debt, or obligation to pay, on the part of the grantor.' The same thought is expressed in *Shanda v. Clutier State Bank*, 220 Iowa 290, 296, 260 N.W. 841. Of the necessity of establishing the debt, the court, in *Clark v. Chapman*, 213 Iowa 737, 743, 239 N.W. 797, 800, said:

"'An important burden of proof rests upon the appellants at this point. Only clear and satisfactory evidence can be accepted to warrant the conversion of a warranty deed into a mortgage security. It was incumbent upon the defendants to prove in such manner: (1) That the consideration for the warranty deed was an existing indebtedness, together with the amount of such indebtedness; and (2) that such indebtedness was not extinguished by the conveyance, but was kept alive.'" *Reusch v. Shafer*, 241 Iowa 536, 547–548, 41 N.W.2d 651, 657 (1950).

Plaintiffs were instantly granted legal title to the property by the quitclaim deed from defendants. Upon satisfaction of the Ames' mortgage plaintiffs would also receive full equitable rights in the land. Thus, the present factual situation is distinguishable from those cases where a grantor agrees to repurchase property, or a mortgagee is obligated to reconvey land upon payment of the full purchase price.

In support of their position plaintiffs quote this from 59 C.J.S. Mortgages, § 14g:

"A deed of land containing a stipulation that the title shall not vest in the grantee until the purchase money is fully paid, or that, on payment of a designated sum to the grantor, the grantee shall be seized in fee simple, or conditioned that the deed shall be null and void unless a certain amount is paid by a day fixed, is regarded and treated by courts of equity as a mortgage in favor of the grantor."

And id., § 14(i):

"It is generally held that the implied lien which equity raises in favor of the vendor of real property, to secure the payment of the purchase money, is personal and not assignable and does not amount to a mortgage. On the other hand, where a lien for the unpaid purchase money is expressly reserved in the vendor's conveyance, this constitutes in equity a mortgage of the land as security for the price, which may be assigned and transferred and which may be enforced by bill or action for foreclosure."

But such an approach misconstrues the nature of the quitclaim deed here given. It clearly vested legal title in plaintiffs immediately upon delivery and no lien was thereby reserved in favor of defendants.

At this point we again allude to the reverter clause which says, in essence, Lovlies assume the Ames' mortgage and if they fail to meet the obligations thus imposed title shall revert to the Plumbs.

■ Defendants assert this proviso created a determinable fee and upon plaintiffs' default title reverted automatically to them. We agree.

Apparently the leading local case on construction of such a proviso is *Reichard v. Chicago, B. & Q. R. Co.*, 231 Iowa 563, 571–572, 1 N.W.2d 721 727 (1942), where this court said:

"We come now to the contention of the appellees that the estate of the grantee in

the deed was a fee simple on a 'condition subsequent,' or a fee, subject to divestiture on the breach of, or failure to perform the condition prescribed in the instrument of conveyance. One must do much hair splitting to find any difference or distinction in the defeasible events which have been held, in the hundreds of cases where the question has arisen, to have terminated determinable fees, and fees upon condition subsequent. The difference between the two estates lies in the fact that if it is a determinable fee, the happening of the limiting event prescribed, automatically and ipso facto, terminates the fee, and it reverts to the grantor or his successors in interest without any act or move on the part of any of them. While if it is a fee upon condition, the happening of the event or the breach of the condition merely gives the grantor or his successors in interest the power to take action, or the right of re-entry, to terminate the fee, which power or right must be affirmatively exercised.

"The determination of which estate was created might depend upon the particular word used to introduce the limiting proviso. If the introducing words were 'so long as,' 'while,' 'until,' or 'during,' the fee was usually held to be determinable, but if the words used were 'upon condition,' or 'provided,' the fee was usually said to be on condition. In other words, if the deed stated 'so long as used for a railway,' it was a determinable fee reverting automatically to the grantor when the use was abandoned, but if it stated 'provided it was used for a railway,' the fee was upon a condition subsequent requiring re-entry of the land or some act upon the part of the grantor to terminate the fee. 26 C.J.S., (Deeds), § 110, p. 400. There are some historical matters, stated by way of obiter, in *Boone Biblical College v. Forrest*, 223 Iowa 1260, 275 N.W. 132 [116 A.L.R. 67], to that effect. Little importance is now attached to the use of particular or formal words in the creation of these estates. 1 Bouvier, Law Dict. 314(8). Such arbitrary distinctions smack too much of the over-refined technicalities of early English real property law. To give importance to it is to 'pay tithe of mint and anise and cummin, and omit the weightier matters of the law.' In construing a deed of this kind, or any like instrument, the intent of the parties is to be ascertained. The language is simple and its meaning clear. It expressly provided that the land was conveyed for depot grounds and for a railroad route through it, and that upon the permanent abandonment of such use, the land was to revert to the grantors, their heirs, or assigns. The meaning of the word 'revert', both by derivation and everyday use, is clear. It means to turn back, to return to."

Cf. "Possibility of Reverter in Iowa", 12 Drake L.Rev. 99 (1963).

It is to us evident the involved quitclaim deed was clear and unambiguous. Fairly construed it conveyed a fee simple determinable upon plaintiffs' failure to keep mortgage payments owing to Ames current. See Burby on Real Property, § 90, at 205 (3d ed. 1965). We are also satisfied both parties (Lovlies and Plumbs) so understood and intended.

Furthermore, this court is persuaded the involved conveyance (quitclaim) from defendants (Plumbs) to plaintiffs (Lovlies) cannot be deemed an equitable mortgage.

Plaintiffs' first assignment is without merit.

II. It is next postulated trial court erroneously found the subject deed was supported by consideration. In essence, plaintiffs contend neither party promised anything except that which each was already legally obliged to do.

At the outset, it is well settled a deed executed and delivered in proper form is supported by a presumption of consideration and the burden is on a party claiming otherwise to establish absence thereof. See §§ 537A.2, 537A.3, The Code 1973; *North v. Manning Trust & Savings Bank*, 169 N.W.2d at 786; 23 Am.Jur.2d, Deeds, §§ 69–70. In the same area, a promise to pay that for which one is already obligated

will not, in itself, suffice as consideration. See *Anderson v. Lundt,* 200 Iowa 1265, 206 N.W. 657 (1925).

Such, however, was not here the case. Defendants, at plaintiffs' request, made an immediate conveyance of the property to the latter. This the defendants were not previously required to do.

In exchange for such conveyance, plaintiffs agreed to personally assume the Ames' mortgage *subject to terms of the deed,* thereby terminating their previous contractual obligations to defendants. See *Lamka v. Donnelly,* 163 Iowa 255, 143 N.W. 869 (1913); cf. Osborne on Mortgages, § 258 (2d ed. 1970). In brief, consideration attended the controverted executory element of the involved deed. See generally Restatement, 2d, Contracts, sections 75, 81, Student Ed., Tentative Drafts Nos. 1–7, 1973.

Plaintiffs' second contention affords no basis for reversal.

III. The Lovlies next argue, assuming validity of the reverter clause, termination of their fee merely placed the parties in status quo ante. Phrased otherwise, plaintiffs maintain that by operation of the reverter clause the parties should be restored to their original status as contract vendors-vendees. In support thereof they rely on dicta in *Reichard supra,* 231 Iowa at 572–573, 1 N.W.2d 721.

But the adoption of this approach would bring into play the doctrine of merger, completely ignored by plaintiffs. In this jurisdiction a contract for conveyance of real estate, absent any showing to the contrary, is deemed to have merged in a subsequent deed. See generally 26 C.J.S. Deeds § 91c; Annot., 38 A.L.R.2d 1310, 52 A.L.R.2d 647. As articulated in *Huxford v. Trustees,* 193 Iowa 134, 136–137, 185 N.W. 72, 74 (1921):

"It is broadly true that a contract to convey land becomes presumptively merged in the subsequent deed executed in performance thereof, and this is so even though the terms and conditions of the deed be not identical with those of the contract. It is always competent for parties to a contract by mutual agreement to change its terms and agreements, and this may be done by means of subsequent deed as effectively as in any other manner. This rule, however, has its qualifications. Though it be generally true that, in all matters of conflict between them, the deed speaks and the contract is silent, yet for some purposes the contract may be and is kept alive and enforceable. For instance, if the deed be uncertain and ambiguous in its own terms, resort may be had to the antecedent contract, as an aid to construing the terms of the deed. If a mistake in the deed be alleged and reformation be sought, the contract becomes competent as evidence on that question. Likewise, if the contract contain collateral agreements or conditions which are not incorporated in the deed, and which are not inconsistent with the terms of the deed as executed, the contract will be deemed to live, for the purpose of the enforcement of such collateral agreements or conditions."

Then too, where merger of contract into deed is denied, the burden of proof rests on the asserting party to show a merger was not intended. See *Swensen v. Union Cent. L. Ins. Co.,* 225 Iowa 428, 434, 280 N.W. 600 (1938). Plaintiffs failed to carry such burden.

The instant record discloses no exceptions to the merger rule are instantly applicable. First, as heretofore noted, the deed is not ambiguous. Second, plaintiffs neither pled mistake nor sought reformation of the instrument. Third, there are no collateral terms in the deed inherently inconsistent with the controlling reverter clause. See *Huxford,* quoted *supra.*

Moreover, testimony reveals the parties intended the deed to be a final expression of their mutual obligations. Plaintiffs wanted and secured full legal title to the property immediately, not per the prior contract. They concomitantly assumed liability on defendants' mortgage to Ames. As a means by which to protect themselves in event plaintiffs defaulted on the mortgage,

defendants retained a specific reversionary right. Plaintiffs were fully aware of this, accepted the encompassing deed without objection, and are thereby bound. It is apparent plaintiffs failed to establish their claimed lack of consideration. This means the presently considered contention is devoid of substance.

IV. Plaintiffs also assert it would be inequitable and unconscionable if defendants were allowed to retain title and possession of the property. They attendantly posit defendants have devised a new "legal way" to divest contract vendees of title to realty without according redemption rights.

■ Admittedly, equity abhors forfeitures. See *Collins v. Isaacson, supra,* 261 Iowa at 1242, 158 N.W.2d 14. By the same token, forfeitures are not favorites of either law or equity, and when enforced, those claiming under them should show the equities are clearly on their side. See *Kilpatrick v. Smith,* 236 Iowa 584, 593, 19 N.W.2d 699 (1945).

■ It has further been said, laches will be applied only where it would be inequitable to permit recovery or it is clearly demanded in the interest of justice. Each case is governed chiefly by its own circumstances. See *Shives v. Niewoehner,* 191 N.W.2d 633, 637 (Iowa 1971), and citations.

■ On the other hand, equity aids the vigilant. See McClintock on Equity, § 28 (2d ed. 1948). Furthermore, this court significantly stated in *Swartz v. Bly,* 183 N.W.2d 733, 739 (Iowa 1971):

" 'A party who has the right to treat a deed absolute on its face as a mortgage and to redeem from it must be reasonably prompt in asserting such right; very long delay, amounting to laches on his part, may defeat his right to have the deed declared to be a mortgage and his right of redemption, *especially if interests of third persons have intervened, or if the grantee has been allowed to deal with the property in such manner that a redemption would seriously prejudice him,* and one conclusively chargeable with full knowledge of his rights will not be permitted to excuse his delay in seeking relief on the ground of ignorance of his rights. * * *.' " (emphasis supplied).

■ Applying the above stated principles to the case at hand, it is apparent plaintiffs' rights, if any, were equitably barred by laches. In July, 1968, they left the premises so as to pursue employment opportunities in Minneapolis. August 16, 1968, defendants re-entered the property and conspicuously posted attendant notices thereon. Also, as soon as circumstances permitted, they gave like notice by mail to defendants. Additionally, Ames Building and Loan Association sent a letter to plaintiffs, August 28, 1968, informing them defendants had paid mortgage delinquencies and advising that defendants be contacted regarding plaintiffs' right or title in the property. Even more importantly, defendants' August 19, 1968, record filing of their reversionary based re-entry affidavit sufficed as constructive notice thereof to plaintiffs. See *First National Bank in Lenox v. Brown,* 181 N.W.2d 178, 183 (Iowa 1970); §§ 558.1, 558.11, 558.41, The Code 1973. See also 41 Iowa L.Rev. 431, 434–435 (1956). By all contemporary standards the foregoing acts by defendants sufficed to put plaintiffs on notice regarding defendants' exercise of their reversion privilege. See *Reichard, supra,* 231 Iowa at 575, 1 N.W.2d 721, 28 Am.Jur.2d, Estates, § 188; cf. 28 Am.Jur.2d, Estates, § 163.

Despite the foregoing factual array plaintiffs remained aloof and silent for more than four years. In the interim, defendants paid and kept current all mortgage, tax and insurance payments. They also managed, repaired and maintained the premises. Coupled with all this, defendants sold the property on contract in 1970 to cross-defendants Hanrahan and Kline.

Manifestly, plaintiffs' above noted quiescence would operate to disadvantage or harm others if their claim of right to the involved property were to be upheld. Thus laches bars the redress they belatedly seek. See *Chadek v. Alberhasky,* 253 Iowa 32, 40, 111 N.W.2d 297 (1961); *Mahaffy v. Faris,* 144 Iowa 220, 227–228, 122 N.W. 934 (1909);

**64**

McClintock on Equity, § 28(a) at 71. Compare *Shives v. Niewoehner,* 191 N.W.2d at 637.

Trial court concluded, "At the very nub of this matter is the fact that the value of the property has increased as a result of economic conditions and defendants' efforts, and plaintiffs seek inequitably and belatedly to profit therefrom." We agree. See *Mahaffy v. Faris, supra.*

V. In light of the foregoing any discussion as to the waiver issue asserted by defendants would needlessly extend this opinion.

VI. Upon the basis of our de novo review we now conclude plaintiffs failed to establish any right to the relief sought by them. Conversely, the equities are with defendants and they stand entitled to the redress sought by their counterclaim.

AFFIRMED.